[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13875

Non-Argument Calendar

_____

CEDRICK THOMAS,

Plaintiff-Appellant,

*versus*

SHERIFF OF JEFFERSON COUNTY,
ALABAMA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:19-cv-00655-ACA

_____

Before ROSENBAUM, JILL PRYOR, and BRASHER, Circuit Judges.

PER CURIAM:

Cedrick Thomas appeals the district court's order granting summary judgment in favor of Mark Pettway in his official capacity as Sheriff of Jefferson County, Alabama, on Thomas's race and sex discrimination claims under Title VII of the Civil Rights Act of 1964. Thomas argues that the district court erroneously determined that the deputies outside of his protected class who received more favorable treatment were not valid comparators for his race and sex discrimination claims. He also argues that the district court erred in finding that the reason given by Pettway for his firing was not pretextual. Thomas last argues that the district court erroneously determined he did not present a "convincing mosaic" of circumstantial evidence of discrimination. Based on our review of the record, we hold that Thomas's arguments fail and affirm the district court's grant of summary judgment.

## I.

Thomas—an African American male—was an employee of the Jefferson County Sheriff's Office in Jefferson County, Alabama, serving as a deputy sheriff starting in January 2014. During his time as an employee of that office, the Sheriff of Jefferson County was Sheriff Mike Hale.

Thomas was charged three times with unauthorized use of force against inmates of the Bessemer Jail, where he worked. In

early November 2017, Thomas entered an inmate's cell and wrestled with him, resulting in injury to the inmate. This was captured by jail security video, and Thomas was suspended for ten days by Sheriff Hale following an uncontested excessive force charge against Thomas. Just a short time later, on November 25, 2017, Thomas slammed another inmate's head into the jail slider door and repeatedly punched him. This was also captured on jail security video, and the internal investigation recommended that Thomas be terminated.

Lastly, in April 2018, Thomas beat an inmate while he was in his cell. The Jefferson County Sheriff's Office conducted an internal investigation into this incident, involving an analysis of security footage as well as Thomas's and the inmate's statements. That investigation found that Thomas used significant force against the inmate, striking the inmate over eighty times while the inmate was in the fetal position. Moreover, the investigation found that the inmate had neither assaulted Thomas nor disrupted security. Thus, the investigation determined that Thomas's use of force was unauthorized, and the internal investigators again recommended his termination.

Sheriff Hale held a hearing to provide Thomas with an opportunity to address the excessive use of force charges against him. After that hearing, Sheriff Hale terminated Thomas, effective July 16, 2018.

Thomas appealed his termination to the Personnel Board of Jefferson County, but that appeal was stayed due to a criminal

assault charge against him in state court for this last incident. In the meantime, Mark Pettway was elected Sheriff of Jefferson County, Alabama. And after Thomas's criminal case and Sheriff Pettway's review of the evidence, Sheriff Pettway pursued the resolution of Thomas's still pending internal appeal, which he inherited from Sheriff Hale. Sheriff Pettway assigned employees to defend Sheriff Hale's termination of Thomas at an appeal hearing before the Personnel Board of Jefferson County in November 2021. The Personnel Board of Jefferson County sustained Thomas's termination.

Then, Thomas brought race-based and sex-based discrimination claims under Title VII of the Civil Rights Act of 1964 against Sheriff Pettway, who is still the Sheriff of Jefferson County, Alabama. Thomas claims that similarly situated white deputies and similarly situated female deputies have not been disciplined for using similar force and that he has been discriminated against because of his race (African American) and sex (male). After examining the evidence submitted along with a motion for summary judgment and the response to that motion, the district court granted summary judgment to Sheriff Pettway. Thomas appeals.

## II.

We review *de novo* the grant of summary judgment. *See Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023) (citing *Ave. CLO Fund, Ltd. v. Bank of Am., NA*, 723 F.3d 1287, 1293 (11th Cir. 2013)). Summary judgment should be granted only if there is no genuine dispute of material fact, *see id.* (quoting Fed. R. Civ. P. 56(a)), and the party "is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a); *see also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A genuine issue of material fact exists if sufficient evidence is submitted for a jury to return a verdict for the nonmovant. *See Stewart*, 117 F.3d at 1284–85 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "When assessing the sufficiency of the evidence in favor of the nonmoving party, we must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Id.* at 1285 (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)).

"We are not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly probative." *Id.*; *see also Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022) ("To defeat summary judgment, 'a mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" (quotation marks omitted and alteration adopted in original) (quoting *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc))). While "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment," *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (citing *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1254 (11th Cir. 2013); *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir.), *modified on other grounds on denial of reh'g*, 425 F.3d 1292 (11th Cir. 2005)), "unsubstantiated assertions alone are not enough to withstand a

motion for summary judgment," *Anthony*, 69 F.4th at 804 (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987)).

## III.

Title VII makes it illegal to fire any individual because of that individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). This circuit recognizes three ways to establish intentional discrimination through a disparate treatment claim under Title VII: (1) "present[ing] direct evidence of discriminatory intent," *Lewis v. City of Union City* (*Lewis I*), 918 F.3d 1213, 1220 n.6 (11th Cir. 2019) (en banc) (citing *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921–22 (11th Cir. 2018)); (2) succeeding under the *McDonnell Douglas* framework, *see id.* at 1220 (citing generally *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); and (3) "demonstrat[ing] a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination," *see id.* at 1220 n.6 (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). Statistical data may also be used in a Title VII claim that alleges a pattern or practice of discrimination. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Because of this legal framework and the fact that Thomas has neither presented direct evidence of discrimination nor made a statistical argument, we will address Thomas's comparator arguments under the *McDonnell Douglas* framework before separately addressing Thomas's "convincing mosaic" arguments.

### A.    McDonnell Douglas *Framework*

"In [most] cases where direct evidence of employment discrimination is lacking, we analyze the claim under the *McDonnell Douglas* framework." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). The *McDonnell Douglas* framework first requires the plaintiff to establish a prima facie case of discrimination, then requires the defendant to proffer a nondiscriminatory reason for the employment decision, and last requires the plaintiff to establish that the proffered reason was pretextual. *See McDonnell Douglas Corp.*, 411 U.S. at 801–05; *Lewis I*, F.3d at 1220–21.

The prima facie case requires: (1) membership in a protected class; (2) an adverse employment action; (3) qualification for the job; and (4) "that [the] [] employer treated 'similarly situated' employees outside [the plaintiff's] [] class more favorably." *Lewis I*, 918 F.3d at 1221 (citing *Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir. 1997)); *see also id.* at 1220–21 (citing *Holifield*, 115 F.3d at 1561–62). Courts often refer to the "similarly situated" individual as a "comparator." *Id.* at 1217 (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258–59 (1981)).

A fellow employee is "similarly situated" when they are "similarly situated in all material respects," *id.* at 1224, which means "that they 'cannot reasonably be distinguished,'" *id.* at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)). This generally requires the comparator to (1) "have engaged in the same basic conduct (or misconduct) as the plaintiff," *id.* at 1227

(citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580, 583 (6th Cir. 1992)); (2) "have been subject to the same employment policy, guideline, or rule as the plaintiff," *id.* (citing *Lathem v. Dep't of Child. & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999)); (3) "have been under the jurisdiction of the same supervisor as the plaintiff," *id.* at 1227–28 (citing *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989)); and (4) "share the plaintiff's employment or disciplinary history," *id.* at 1228 (citing *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 304 (6th Cir. 2016)). To determine whether the misconduct was basically the same, we consider both the number and nature of acts of misconduct. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1318 (11th Cir. 2003).

Applying this case law to Thomas's race and sex discrimination claims, we cannot say that Thomas has made out a prima facie case of discrimination. Thomas successfully meets three of the prima facie case requirements. First, Thomas is African American and male, which are both protected classes under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (listing race and sex among other classes); *Lewis I*, 918 F.3d at 1220 (citing *Holifield*, 115 F.3d at 1561–62). Second, Thomas was subjected to an adverse employment action when he was fired. *See Lewis I*, 918 F.3d at 1221. Third, no one has disputed that Thomas was qualified for the position as a deputy sheriff. *See id.* at 1220–21 (citing *Holifield*, 115 F.3d at 1561–62). The dispute centers around Thomas's identification of proper comparators, which he fails to do.

### 1.  Race-based Discrimination Claim

As to his race discrimination claim, Thomas's proposed comparators were not similarly situated. On appeal, Thomas limits his race-based discrimination comparator arguments to six white, male deputies: Deputies Kersh, Junkins, O'Neal, Arceo, Powell, and Butler. But Thomas had a distinct disciplinary history that these white deputies did not have, and he engaged in distinct misconduct from these white deputies. Thomas had violated the use of force policy three times before he was fired and had committed severe misconduct by striking an inmate eighty times while the inmate was in the fetal position.

We will briefly walk through the differences between Thomas's disciplinary history and misconduct and those of his proposed white comparators.

Three of Thomas's proposed white comparators—Deputies Junkins, O'Neal, and Powell—had no record of use of force violations during the period of Thomas's employment, according to the affidavit of the head of internal affairs for the sheriff's office. Junkins was involved in an incident in which he tased an inmate who was fighting Deputy Kersh. O'Neal got into a scuffle with an inmate who pulled away from him and threatened to punch him, and O'Neal placed the inmate in a hold until the inmate calmed down—and subsequently placed the inmate in handcuffs. Powell tased an inmate who would not stop fighting another inmate and lie flat on the ground. The record contains no evidence that any of these three deputies was investigated or disciplined for these

events, and none of these deputies has a record of violating the excessive force policy. This distinguishes their disciplinary histories from Thomas's history. Thomas's three incidents where he used force are also much different in terms of the type of conduct, especially his use of force to strike an inmate over eighty times.

Another proposed comparator, Deputy Arceo, once tased an inmate who threatened him; and another time he drive-stunned an inmate after the inmate refused to return to his cell upon being instructed to do so. Notably, the record contains no evidence that Deputy Arceo was investigated or disciplined for his two incidents in which he used force. This distinguishes his disciplinary history from Thomas's history. Arceo's use of force was also very different from Thomas's in type, and we cannot conclude that Arceo's actions are misconduct on this record.

Deputy Kersh was investigated after pepper spraying some fighting inmates, but that use of force was determined to be authorized. Similarly, Deputy Kersh's other incident involved him defending himself after being struck in the face with a food tray; and Kersh was not even the officer who tased and subdued the inmate during that incident. The record contains no evidence about whether Kersh received a use of force violation for the second incident. In short, Kersh had one authorized use of force event followed by an event in which the record does not say what the result was—but in which any force Kersh used was in self-defense based on this record. This is very different from Thomas's history of violent misconduct and subsequent punishment. Moreover, Thomas's

incident involved the unauthorized hitting of an inmate eighty times, which is far different and more severe than Kersh's authorized pepper spraying.

The record establishes that Deputy Butler has been disciplined twice. First, Butler was suspended for five days for a disciplinary violation, but we do not know the nature of the misconduct. Second, Butler was suspended for ten days for an unauthorized use of force after he kicked an inmate twice during a struggle with the inmate. However, Thomas had already had two incidents of misconduct before the third misconduct for which he was fired. Additionally, hitting an inmate eighty times is a significantly more severe use of force than hitting an inmate twice. Thus, Thomas had a longer history of misconduct and more severe misconduct than Butler.

Thomas thus had a longer history of misconduct than each of the proffered white deputies. Therefore, these white deputies did not "share the plaintiff's employment or disciplinary history." *Lewis I*, 918 F.3d at 1228 (citing *Tennial*, 840 F.3d at 304). Moreover, Thomas's conduct was more severe than that of the other deputies named as possible comparators. Thomas struck the inmate more than eighty times, which was far more severe than the authorized use of pepper spray or a taser or the unauthorized kicking of an inmate twice. Because we consider both the number and nature of acts of misconduct to determine whether the misconduct was basically the same, we conclude that the proffered white deputies did not have basically the same misconduct as Thomas. *See Knight*, 330

F.3d at 1318. Consequently, none of the deputies named by Thomas was similarly situated for purposes of his race-based discrimination claim. Because Thomas has not presented evidence of better treatment of similarly situated comparators, Thomas fails to establish a prima facie case of race-based discrimination.

### 2. Sex-based Discrimination Claim

As to his sex discrimination claim, Thomas's proffered comparator—Deputy Johnson (an African American woman)—was not similarly situated. Johnson had zero use of force charges or violations in her work history during the period of Thomas's employment. Moreover, Thomas's only evidence of use of force by Johnson is his deposition testimony that he had heard of allegations by a supervisor that Johnson fought with and threw around a female inmate and had tased some inmates. It is true that "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *Stein*, 881 F.3d at 857 (citing *Feliciano*, 707 F.3d at 1254; *Price*, 416 F.3d at 1345). But "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Anthony*, 69 F.4th at 804 (quoting *Rollins*, 833 F.2d at 1529). Thomas has no evidence that Johnson engaged in the same basic misconduct as Thomas or has a similar disciplinary history. Therefore, Johnson is not a valid comparator for Thomas's sex discrimination claim. Because Thomas has not presented evidence of better treatment of similarly situated comparators, Thomas fails to establish a prima facie case of sex-based discrimination.

### 3.  Result Under *McDonnell Douglas* Framework

Because none of the comparators proffered by Thomas was "similarly situated in all material respects," the district court did not err in concluding that he had failed to present a prima facie case of either race-based or sex-based discrimination. Therefore, Thomas does not succeed under the *McDonnell Douglas* framework.

### B.      *"Convincing Mosaic" Framework*

In addition to presenting direct evidence or succeeding under the *McDonnell Douglas* framework, a former or current employee can survive summary judgment on a disparate treatment claim by presenting enough circumstantial evidence to create a triable issue about the employer's discriminatory intent. *See Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (quoting *Smith*, 644 F.3d at 1328). "A triable issue of fact exists [in a Title VII case] if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (internal quotation marks omitted in original) (quoting *Smith*, 644 F.3d at 1328).

A "convincing mosaic" may be shown by "evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) 'systematically better treatment of similarly situated employees,' and (3) pretext." *Id.* (quoting *Lewis v. City of Union City* (*Lewis II*), 934 F.3d 1169, 1185 (11th Cir. 2019)).

We have held that within the "convincing mosaic" framework, "[a] plaintiff can show pretext by" (a) "casting sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered reasons were not what actually motivated its conduct," (b) "showing that the employer's articulated reason is false and that the false reason hid discrimination," or (c) "establishing that the employer has failed to clearly articulate and follow its formal policies." *Lewis II*, 934 F.3d at 1186 (citing *Lewis I*, 918 F.3d at 1257 (Rosenbaum, J., concurring in part and dissenting in part)).

But establishing pretext alone is not enough for a plaintiff to survive summary judgment: "a reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Springer*, 509 F.3d at 1349 (quoting *Brooks v. Cnty. Comm'n*, 446 F.3d 1160, 1163 (11th Cir. 2006)). That is, a plaintiff must still identify evidence of discrimination within the "convincing mosaic" framework—even if it need not always be established to call an explanation "pretextual" under the "convincing mosaic" case law—because the whole "convincing mosaic inquiry is identical to the final stage of the *McDonnell Douglas* framework: both ask whether there is enough evidence for a reasonable jury to infer intentional discrimination." *See Ossmann v. Meredith Corp.*, —— F.4th ——, ——, No. 22-11462, 2023 WL 5809642, at *9 (11th Cir. Sept. 8, 2023) (citing *Smith*, 644 F.3d at 1328; *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021)). When analyzing circumstantial evidence under the "convincing mosaic" framework, we have considered whether

there was animus against non-comparators in the plaintiff's protected class, *see Jenkins*, 26 F.4th at 1251, whether the employer had a reason to discriminate such as to counteract a public perception of leniency, *Smith*, 644 F.3d at 1344–45, and whether the decision was extraordinarily arbitrary, *Lewis II*, 934 F.3d at 1185–86, 1189.

Again, we must approach the convincing mosaic inquiry in a holistic manner, looking for evidence of discrimination. But "Title VII does not empower a court (or jury) to 'sit as a super-personnel department that reexamines an entity's business decisions.'" *Gogel*, 967 F.3d at 1143 (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). The issue is not whether the facts underlying the discharge are true but whether the employer believed them. *See id.* at 1148 ("[W]hen assessing whether an employer has properly imposed an adverse action on an employee based on that employee's conduct, the question is not whether the employee actually engaged in the conduct[] but instead whether the employer in good faith believed that the employee had done so.").

### 1.  Race-based Discrimination Claim

Here, there is no evidence in the record of animus against other African American employees. Nor is there any evidence in the record that the Jefferson County Sheriff's Office had a reason to discriminate.

As discussed above, none of the deputies named by Thomas was similarly situated. The differential treatment of other deputies is explained by their different disciplinary histories and conduct.

The fact that the office sometimes paid settlements in lawsuits arising from deputies' actions is irrelevant. Moreover, the decision to fire Thomas with a more extensive history of misconduct in the face of a very serious infraction is reasonable—even if other deputies with less serious misconduct and lesser histories of misconduct were not fired. This is completely consistent. Thus, the deputies' differential treatment is not inconsistent with the reason proffered by Pettway, and these facts do not give rise to an inference of discrimination.

And there is no evidence that the reason for Thomas's firing proffered by Pettway was pretextual. Thomas did not identify any weakness, implausibility, or inconsistency in Pettway's explanation that Thomas was fired because he had two prior use of force incidents and had struck an inmate over eighty times when that inmate had neither assaulted Thomas nor disrupted security. There is nothing suspect about this explanation, so Thomas fails to establish that the explanation given for firing him was pretextual.

Even accepting as true—as we must at this stage—Thomas's testimony that Pettway once expressed an opinion that Thomas's firing was racially based, Thomas still fails to establish pretext for discrimination. That statement was before Pettway's election as sheriff, Pettway was on leave at the time because he was running for sheriff, and Pettway was not a decisionmaker in Thomas's case. Pettway had no personal knowledge about the circumstances leading to Thomas's firing, which was done by former Sheriff Hale. Thus, Thomas's statement—accepted as true—does not support an

inference that discrimination occurred because Pettway had no knowledge with which to support that statement, and he allegedly made that statement when he was merely a fellow employee at the sheriff's office. After Pettway became sheriff and reviewed the case, he thought that there was no discrimination and agreed with the termination.

Furthermore, Thomas's termination was not extraordinarily arbitrary. Firing him for his repeated violent acts and breaches of policy is not arbitrary. Instead, the decision to terminate him given his history and the severity of his conduct is a logical decision in line with the office's other employment decisions. Thomas fails to establish pretext and especially fails to establish pretext for discrimination. Therefore, the district court did not err in finding that Thomas failed to establish Pettway's proffered reason was pretextual.

Based on these considerations, the district court properly determined that Thomas did not present a convincing mosaic of circumstantial evidence of discrimination. Therefore, Thomas's "convincing mosaic" argument related to his race-based discrimination claim fails.

### 2.  Sex-based Discrimination Claim

Thomas has abandoned and forfeited the "convincing mosaic" issue with respect to his sex discrimination claim. We have held that, "[t]ypically, issues not raised in the initial brief on appeal are deemed abandoned." *United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022) (en banc) (citing *United States v. Levy*, 379 F.3d 1241,

1242–45 (11th Cir. 2004)). But we have further held that "the mere failure to raise an issue in an initial brief on direct appeal should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* in extraordinary circumstances after finding that one of our *Access Now* forfeiture exceptions applies." *Id.* at 873 (citing generally *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324 (11th Cir. 2004)). "[W]e have identified five situations in which we may exercise our discretion to consider a forfeited issue": (1) "the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice"; (2) "the party lacked an opportunity to raise the issue at the district court level"; (3) "the interest of substantial justice is at stake"; (4) "the proper resolution is beyond any doubt"; or (5) "the issue presents significant questions of general impact or of great public concern." *Id.* (citing *Access Now, Inc.*, 385 F.3d at 1332; *United States v. Godoy*, 821 F.2d 1498, 1504 (11th Cir. 1987)).

To be clear, we need not address a forfeited issue even if one or more *Access Now* forfeiture exceptions apply. *See id.* ("The degree to which we adhere to the prudential practice of forfeiture and the conditions under which we will excuse it are up to us as an appellate court." (citing J. Dickson Phillips, Jr., *The Appellate Review Function: Scope of Review*, 47 Law & Contemp. Probs. 1, 3 (1984))). Finding that one of the *Access Now* forfeiture exceptions applies is a necessary, but not a sufficient, condition to resurrecting an issue forfeited on appeal. "To consider an issue [that is] abandoned on appeal, whether on a party's motion or *sua sponte*, we must first find that one of our forfeiture exceptions applies and then decide

whether the issue is extraordinary enough for us to exercise our discretion and excuse the forfeiture." *Id.* at 874–75 (footnote omitted). "In most cases, an issue abandoned on appeal should [] be dismissed without reaching the merits." *Id.* at 875.

Thomas's brief only discusses the "convincing mosaic" framework in terms of his race-based discrimination claim. Likewise, Thomas's brief only discusses his pretext arguments in terms of his race-based discrimination claim. Thus, Thomas has forfeited these issues with respect to his sex-based discrimination claim. Here, none of the *Access Now* factors applies; and this is not an extraordinary circumstance such that we should resurrect this forfeited issue. Therefore, we will not excuse Thomas's forfeiture of these issues. Thus, Thomas has abandoned and forfeited on appeal his "convincing mosaic" arguments and their concomitant pretext arguments related to his sex discrimination claim.

### 3. Result Under "Convincing Mosaic" Framework

Thomas's race-based discrimination claim fails substantively under the "convincing mosaic" framework, and Thomas has abandoned and forfeited on appeal the issue of analyzing his sex discrimination claim under the "convincing mosaic" framework. Therefore, Thomas's claims cannot survive summary judgment under the "convincing mosaic" framework.

### IV.

For the reasons stated above, we **AFFIRM** the district court's grant of summary judgment.