[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11166

_____

JOSHUA MICHAELS,

Plaintiff-Appellant,

*versus*

SASSER'S GLASS WORKS INC.,
JEFF JOHNSON,
LLOYD PENDER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-80640-RKA

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

This case arises out of appellant Joshua Michaels's employment with Sasser's Glass Works, Inc. ("SGW"). Michaels worked for SGW for approximately one month. After SGW terminated his employment, Michaels sued SGW and two of its employees, Jeff Johnson and Lloyd Pender (collectively, "the SGW defendants"). He brought a variety of claims against the SGW defendants under Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act of 1992 ("FCRA"), and 42 U.S.C. § 1981. The district court granted summary judgment to SGW on the Title VII and the FCRA claims, concluding that SGW was not an employer covered by those statutes. The district court also granted the SGW defendants summary judgment on the § 1981 claims based on race discrimination and retaliation, holding that Michaels failed to produce either direct or indirect evidence of discrimination and retaliation. After careful review, and with the benefit of oral argument, we affirm.

## I.       BACKGROUND

Michaels, a Native American, began working for SGW as a glazier.[1] During his approximately one month of employment, SGW asked Michaels to accept a lower hourly pay, placed him on a different team, and demoted him to helper. After he complained

---

[1] Because we write only for the parties, who are already familiar with the facts and proceedings in the case, we include only what is necessary to explain our decision.

about work conditions and quarreled with other employees, SGW terminated him.

Michaels sued SGW as well as two senior employees of the company, Johnson and Pender, bringing claims under Title VII, the FCRA, and § 1981. His operative complaint alleged the following claims: race discrimination in violation of § 1981 (Count I); retaliation in violation of § 1981 (Count II); race discrimination in violation of the FCRA (Count III); national origin discrimination in violation of the FCRA (Count IV); retaliation in violation of the FCRA (Count V); hostile work environment in violation of the FCRA (Count VI); race discrimination in violation of Title VII (Count VII); national origin discrimination in violation of Title VII (Count VIII); retaliation in violation of Title VII (Count IX); and hostile work environment in violation of Title VII (Count X). He alleged that all three defendants violated § 1981, whereas SGW alone violated Title VII and the FCRA.

After discovery, SGW, Johnson, and Pender moved for summary judgment. The district court granted their motion. As to the Title VII and FCRA claims, the district court concluded that SGW was entitled to summary judgment because the undisputed evidence showed that it did not employ 15 or more employees in each of 20 or more calendar weeks during the relevant period. Because SGW did not have the requisite number of employees, it did not qualify as an employer under either Title VII or the FCRA.

The district court also granted summary judgment to the SGW defendants on Michaels's § 1981 claims based on disparate

treatment and retaliation. For the disparate treatment theory, Michaels relied on evidence that Johnson referred to him using a racial slur, arguing that this constituted direct evidence of discriminatory intent. But the court rejected this argument, explaining that to qualify as direct evidence of discrimination, the statements had to be "made in the context of [Michaels's] termination." Doc. 113 at 13 (internal quotation marks omitted).[2] Because Johnson did not terminate Michaels, the district court concluded that his statement did not qualify as direct evidence of discriminatory intent. The district court acknowledged that an employee could rely on circumstantial evidence of discriminatory intent to defeat summary judgment. But the court explained that Michaels "expressly disclaim[ed] any reliance on [the] *McDonnell Douglas* [test]—and he never even hint[ed] at any mosaic theory." Doc. 113 at 20. Because Michaels disavowed any reliance on circumstantial evidence of discrimination, the district court granted summary judgment to the defendants on the § 1981 claim based on disparate treatment.

For the retaliation theory, Michaels did rely on circumstantial evidence, and the district court applied the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the first step, the district court considered whether Michaels had established a prima facie case of retaliation. The court concluded that Michaels failed to come forward with evidence that he had engaged in statutorily protected activity.

---

[2] "Doc." numbers refer to the district court's docket entries.

But even if Michaels had satisfied the first step of the *McDonnell Douglas* framework and established a prima facie case of retaliation, the district court concluded, the SGW defendants would be entitled to summary judgment. The court explained that at the second step of the framework, SGW had articulated a legitimate, nondiscriminatory reason for Michaels's termination: he was fired after screaming profanities at his second supervisor, Dwayne Morris, in front of customers. The court then considered the third step of the framework and looked at whether Michaels had come forward with evidence showing that the SGW defendants' proffered reason for his termination "was merely a pretext to mask retaliatory actions." Doc. 113 at 22 (alteration adopted) (internal quotation marks omitted). At this step, the court concluded that Michaels had "no evidence" that the "reliance on this profanity-laced tirade was mere pretext for discrimination." *Id.* at 24.

The district court did not consider whether the SGW defendants would be entitled to summary judgment on a § 1981 race discrimination claim under a hostile work environment theory. Instead, it interpreted Count I of the complaint, which alleged a § 1981 race discrimination claim, as raising only a disparate treatment theory, rather than both a disparate treatment theory and a hostile work environment theory. In its view, Michaels raised the "hostile-work-environment claims [only] under Title VII and the FCRA." Doc. 113 at 11–12 n.5.

This is Michaels's appeal.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.    DISCUSSION

Michaels challenges the grant of summary judgment on all his claims. We first discuss the Title VII and FCRA claims and then turn to the § 1981 claims.

### A.    Title VII and the FCRA

Michaels argues that the district court erred in granting summary judgment to SGW on his Title VII and FCRA claims. In the operative complaint, Michaels alleged three theories of liability under these statutes: disparate treatment, retaliation, and hostile work environment. Doc. 88-1 at 9–26 (Counts III–X).

Both Title VII and the FCRA prohibit employers from intentionally discriminating against an employee based on his race or national origin. 42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10(1)(a). These statutes also prohibit employers from retaliating against

employees who engaged in protected conduct. 42 U.S.C. § 2000e-3(a); Fla. Stat. § 760.10(7). Both statutes define "employer" as an entity that had "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year" at the time of the alleged violation. 42 U.S.C. § 2000e(b); *accord* Fla. Stat. § 760.02(7).

Here, the district court correctly concluded that SGW was entitled to summary judgment. The undisputed evidence showed that SGW did not qualify as an employer under either Title VII or the FCRA because it did not have the required number of employees. At the summary judgment stage, SGW submitted an affidavit from SGW's majority owner explaining that the company did not employ 15 or more employees for 20 or more calendar weeks during the relevant time. Because this evidence showed that SGW was entitled to judgment as a matter of law, the burden then shifted to Michaels to come forward with evidence demonstrating a genuine dispute of material fact as to the number of employees. *See* Fed. R. Civ. P 56(a); *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311–12 (11th Cir. 2018). He failed to do so.

Michaels argues that he carried his burden because another employee's testimony showed that SGW had at least 15 employees during the relevant time. During his deposition, supervisor and minority shareholder Johnson testified that he did not know the number of employees who worked for SGW. Michaels is correct that, upon further questioning, Johnson stated that "[m]aybe 15" people worked for SGW when Michaels was employed. Doc. 78-1 at 95.

But even if this testimony would allow a reasonable jury to find that SGW had 15 employees during the approximately one-month period when Michaels was employed, Johnson's testimony did not address whether SGW had 15 or more employees for a period of 20 or more calendar weeks in a year. Hence, this testimony was insufficient to create a genuine dispute of fact as to whether SGW qualified as an employer under Title VII or the FCRA. The district court thus properly granted summary judgment on the Title VII and FCRA claims.

## B.    Section 1981

We now turn to Michaels's § 1981 claims. "Section 1981 prohibits intentional race discrimination in the making and enforcement of . . . employment contracts." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (internal quotation marks omitted); *see* 42 U.S.C. § 1981. It allows three theories of liability: hostile work environment, disparate treatment, and retaliation. *See, e.g.*, *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1283–84 (11th Cir. 2018) (asserting all three theories under § 1981). Michaels argues that the district court should have denied the SGW defendants summary judgment on his hostile work environment, disparate treatment, and retaliation theories arising under § 1981. We address each theory in turn.

### 1.    Hostile Work Environment

We begin with the § 1981 hostile work environment theory. To succeed on a § 1981 discrimination claim under a hostile work environment theory, an employee must show that (1) he belongs

to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was dependent on his race; "(4) the harassment was sufficiently severe or pervasive to alter the terms of [his] employment and create a discriminatorily abusive working environment[;] and (5) the employer is responsible for the environment under a theory of vicarious or direct liability." *Smelter*, 904 F.3d at 1284.

Michaels argues that the district court erred by granting summary judgment to the SGW defendants without addressing the merits of his § 1981 hostile work environment theory. But the SGW defendants argue that Michaels "failed to assert a hostile work environment claim under" § 1981, so the district court had no need to consider it. Appellees' Br. 11. The SGW defendants are correct. In the operative complaint, Michaels raised § 1981 claims against the SGW defendants in Counts I and II. But nowhere in these counts did he allege that he was subjected to a hostile work environment. Instead, these counts alleged that the SGW defendants were liable under disparate treatment and retaliation theories.

Michaels argues that Count I alleged a hostile work environment theory of liability as well as a disparate treatment theory. True, we have recognized that a plaintiff may raise both theories in a single count. *See Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1245–46 (11th Cir. 2004). But we are not persuaded that Michaels raised both theories in Count I because its allegations were insufficient to provide the SGW defendants with notice that he was raising a hostile work environment theory. *See Jackson v. Bellsouth Telecomms.*,

372 F.3d 1250, 1270–71 (11th Cir. 2004) (addressing notice pleading requirements).

Notably, the allegations in Count I were repeated almost verbatim in Count III, where Michaels asserted under the FCRA a race discrimination claim based on disparate treatment.[3] By contrast, the allegations in Count I were different from the allegations in the two counts identified as hostile work environment claims: Count VI, labeled as a claim for "Hostile Work Environment in Violation of the FCRA," and Count X, labeled as a claim for "Hostile Work Environment in Violation of 42 U.S.C. § 2000e." Doc. 88-1 at 16, 24. In Counts VI and X, Michaels alleged that he was subject to a "hostile work environment," explaining that he was the target of "harassing conduct" because of his race, and that the harassment was "severe" and "pervasive," such that it "interfered with [his] work performance." *Id.* at ¶¶ 97–98, 102, 143–44, 147. No similar allegations mentioning a hostile work environment, harassing conduct, or severe and pervasive harassment appeared in Count I. Given Count I's significant similarities to Count III and its meaningful differences with Counts VI and X, we conclude that Count I raised a § 1981 race discrimination claim based on a disparate treatment theory only.

---

[3] Aside from minor changes in word order, the only meaningful differences between Counts I and III were that: in Count I Michaels alleged that he was a member of a protected class under § 1981, but in Count III he alleged that he was a member of a protected class under the FCRA; and in Count I Michaels alleged that he was entitled to attorney's fees under § 1988, but he made no mention of attorney's fees in Count III.

At oral argument, Michaels pointed to the allegations in paragraphs 35, 44 through 47, 49, and 52 of the operative complaint to argue that he alleged a hostile work environment theory in Count I. He is correct that at least some of these paragraphs, particularly the one located in the complaint's "general allegations and facts" section, use language suggestive of a hostile work environment theory. Indeed, paragraph 35 alleged that "Johnson created a hostile environment by making racial epithets . . . on or about September 15, 2020." *Id.* at ¶ 35. But given that Michaels expressly brought hostile work environment claims under the FCRA and Title VII in Counts VI and X, we are not persuaded that this reference to a hostile work environment theory in the general allegations preceding all counts provided the SGW defendants with notice that Michaels was relying on a hostile work environment theory for the § 1981 claim in Count I.

Michaels nevertheless argues that we should treat the complaint as having raised a § 1981 discrimination claim under a hostile work environment theory because at summary judgment he introduced evidence that he was called a racial slur and subjected to a hostile work environment under § 1981. We acknowledge the extremely offensive nature of the racial epithet. But "[a] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Because there was no § 1981 hostile work environment theory pled in the operative complaint, the district court did not err in granting summary judgment on Count I without addressing this theory.

2.      Disparate Treatment

We next consider Michaels's § 1981 claim based on disparate treatment. To succeed on a disparate treatment theory, an employee must show that he was subjected to a tangible employment action. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020). A tangible employment action is a decision that affects an employee's "continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts." *Id.* In addition to showing a tangible employment action, the employee must show that the employer intentionally discriminated against him. *See Jenkins*, 26 F.4th at 1249.

To demonstrate that an employer intentionally discriminated against him, an employee may rely on either direct evidence or circumstantial evidence. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920 (11th Cir. 2018). "Direct evidence is evidence[] that, if believed, proves the existence of discriminatory intent without inference or presumption." *Id.* at 921 (alterations adopted) (internal quotation marks omitted).[4] "In contrast, circumstantial evidence only suggests, but does not prove, a discriminatory motive . . . ." *Id.* at 921–22 (internal quotation marks omitted).

We have "marked severe limits for the kind of language" that qualifies as direct evidence of discrimination. *Jones v. Bessemer*

---

[4] Because we examine claims of discrimination and retaliation arising under § 1981 using the same legal framework that we apply to such claims arising under Title VII, we may look to cases arising under Title VII when analyzing § 1981 claims. *See Jefferson*, 891 F.3d at 919.

*Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of" race qualify as direct evidence. *Jefferson*, 891 F.3d at 922 (internal quotation marks omitted). An example of direct evidence would be a manager saying, "Fire Earley—he is too old." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see Jefferson*, 891 F.3d at 922 (treating the manager's statement that the plaintiff was not hired because the decisionmaker "wanted a Korean in that position" as direct evidence). Importantly, "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1301 (11th Cir. 2023) (internal quotation marks omitted).

Here, both in the district court and on appeal, Michaels has relied solely on a direct evidence theory. He says that the racial epithets Johnson allegedly directed at him qualified as direct evidence of discrimination.[5]

Although the remarks attributed to Michaels's supervisor are abhorrent, we cannot say they qualify as direct evidence. These remarks were unrelated to the decisionmaking process in which

---

[5] Because Michaels argued both in the district court and on appeal that his disparate treatment theory was based upon direct evidence of discrimination only, we do not consider whether there was circumstantial evidence of discrimination. *See Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020) (declining to consider whether the statement was circumstantial evidence of discrimination when the employee argued only a direct evidence theory).

Michaels was terminated. When viewed in the light most favorable to Michaels, the evidence reflects that these remarks were made during an incident that occurred at least a week before Michaels was terminated, and the remarks did not reference, directly or indirectly, terminating Michaels or taking any other employment action against him. Instead, the record reflects that Michaels was terminated only after a separate incident when he was moved to a new team, and he yelled profanities and walked off the job. And Michaels testified that he did not know whether Johnson was involved with SGW's decision to terminate him.

Instead, both in the district court and on appeal, Michaels has consistently identified a different employee, Pender, as the decisionmaker who decided to terminate him. But he has not come forward with any evidence of remarks from Pender that would constitute direct evidence of discrimination.[6] In this record we see no direct evidence of discrimination regarding his termination.

Michaels nevertheless suggests that the district court erred in granting summary judgment because the remarks were direct

---

[6] Although he argues on appeal that his termination "was all part of Defendant Jeff Johnson's plan," here, just as in the district court, Michaels fails to raise any argument under a cat's paw theory that Johnson's racial animus caused Pender to terminate Michaels. Appellant Br. 22; *see Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1298 (11th Cir. 2021) (explaining that under the "cat's-paw theory, a defendant may be held liable for the racial animus of its non-decisionmaking employee when . . . that employee's discriminatory conduct causes a decisionmaking employee to take an injurious action against the plaintiff").

evidence of discriminatory intent for a different tangible employment action—a demotion to the position of helper that occurred before he was terminated. Although Michaels's pay did not change when he was moved to the new position, he argues that the move was a demotion, and thus a tangible employment action, because the new position was less desirable. But again, even assuming that the move was a tangible employment action, the offensive comments do not qualify as direct evidence because there is no evidence that the supervisor who made them was a decisionmaker involved in the demotion decision or that his comments were made as part of SGW's decisionmaking process in demoting Michaels. Instead, the record reflects that others at SGW made the decision to transfer Michaels to the new position. Because Michaels came forward with no direct evidence of discriminatory intent regarding the demotion decision, the district court properly granted summary judgment to the SGW defendants on Michaels's § 1981 claim based on disparate treatment.

### 3.    Retaliation

We now turn to Michaels's § 1981 claim based on retaliation. He argues that the district court erred in granting summary judgment on this claim because he introduced sufficient circumstantial evidence to show that the SGW defendants retaliated against him.

At the summary judgment stage, § 1981 claims for retaliation based on circumstantial evidence frequently are analyzed using the *McDonnell Douglas* framework. *See Bryant v. Jones*,

575 F.3d 1281, 1307 (11th Cir. 2009). "Under this framework, [an employee] alleging retaliation must first establish a prima facie case by showing that[] (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) [there is] a causal link between the protected activity and the adverse action." *Id.* at 1307–08. These three elements create a rebuttable presumption of an intent to retaliate. *Id.* at 1308.

Once an employee establishes a prima facie case of retaliation, the burden shifts to the employer to rebut the presumption "by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the employer offers a justification, then the presumption of discrimination is rebutted. *Id.* At this point, the employee must come forward with sufficient evidence, which may include evidence relied on at the prima facie case stage, to permit a reasonable factfinder to conclude that the employer's justification was pretextual and that the real reason for the employment action was retaliation. *Id.* To show pretext, the evidence produced "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Furcon v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1313 (11th Cir. 2016) (internal quotation marks omitted). We have explained that the plaintiff must meet the employer's "proffered reason head on and rebut it." *Id.* at 1313–14 (internal quotation marks omitted).

Applying the *McDonnell Douglas* framework, we agree with the district court that the SGW defendants were entitled to summary judgment. Even if Michaels had established a prima facie case that he was terminated after engaging in protected conduct, he cannot demonstrate that his employer's legitimate, non-discriminatory reason for his termination was pretextual. SGW explained that it terminated Michaels after "his profane and volatile behavior" when he yelled at another employee and then "walk[ed] off the job" in the middle of a workday, leaving SGW shorthanded. Doc. 102 at 13. Michaels admitted that in front of customers he screamed profane language, which included calling his second supervisor a "dumb mother fucker" and "an aggravating stupid asshole" and saying, "fuck you." Doc. 47-1 at 88. He also admitted that after he made these statements, he walked off the job. Given these admissions, he failed to demonstrate that the SGW defendants' stated reason for his termination was a pretext for discrimination. *See Tipton v. Canadian Imperial Bank of Com.*, 872 F.2d 1491, 1495 (11th Cir. 1989) (affirming the district court's finding that the employee's "discharge was the direct result of her abusive and disrespectful conduct toward her superior," not because of discrimination).

Michaels also asserts that he suffered retaliation because he was demoted after he "chose not to fight" Johnson. Appellant's Br. 25. But he testified in his deposition that Johnson's attempt to fight him was not because of race. And he admitted that he never reported Johnson's statements and conduct to SGW, so it is unclear how his response to Johnson's statements could have motivated his demotion. Michaels thus failed to establish that his demotion was

on account of race, a necessary element for his retaliation theory. *See Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 961 (11th Cir. 1997) (holding that the plaintiff "failed to establish a prima facie case with respect to his § 1981 claim" because there was no evidence in the record that "the discrimination or retaliation allegedly levelled against him was due to his race"); *see also Jefferson*, 891 F.3d at 924 ("An employee's complaint about discrimination constitutes protected activity if the employee could reasonably form a good faith belief that the alleged discrimination existed." (internal quotation marks omitted)).

Establishing the *McDonnell Douglas* elements "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff also may defeat summary judgment by presenting a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional retaliation. *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310–11 (11th Cir. 2023). Under this approach, "courts must consider the totality of a plaintiff's circumstantial evidence on summary judgment." *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1342 (11th Cir. 2023). Relevant evidence may include, among other things, "(1) suspicious timing or ambiguous statements, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Id.*

We recently explained that the *McDonnell Douglas* framework and the convincing mosaic theory "are two ways to approach

the same question: whether the plaintiff has put forward enough evidence for a reasonable jury to conclude that illegal [retaliation] occurred." *McCreight v. AuburnBank*, 117 F.4th 1322, 1334 (11th Cir. 2024). Regardless of whether a court is considering the plaintiff's "pretext" evidence or his "convincing mosaic" evidence, the inquiry is "the same" because the court is focused on "whether a reasonable jury could infer illegal discrimination." *Id.* at 1335. For the reasons given above, we conclude a reasonable jury could not find that Michaels was fired or demoted in retaliation for engaging in protected conduct.

We thus conclude that the district court did not err in granting summary judgment on the § 1981 claim based on retaliation.

## IV.    CONCLUSION

We affirm the district court's summary judgment ruling.

**AFFIRMED.**