[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-12136

Non-Argument Calendar

_____

DANIEL KANG,

Plaintiff-Appellant,

*versus*

THE MAYOR AND ALDERMAN OF THE CITY OF
SAVANNAH,
ROY W. MINTER, Jr.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

2                     Opinion of the Court                    24-12136

D.C. Docket No. 4:21-cv-00111-RSB-CLR

_____

Before ROSENBAUM, KIDD, and WILSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Daniel Kang appeals the district court's grant of summary judgment for Defendant-Appellees the Mayor and Alderman of the City of Savannah (the City) and Police Chief Roy Minter. Kang argues that the district court erred when it granted summary judgment for Minter on Kang's First Amendment retaliation and Equal Protection claims and for the City on Kang's First Amendment retaliation and procedural due process claims. After careful review, we affirm.

## I.    Background

Kang, an Asian male, began working for the City with the Savannah Police Department (SPD) in September 2012. He served as a corporal as part of a team that served arrest warrants. In April 2020, Kang and other officers went to serve an arrest warrant on Kahlil Kelly. During this attempt, Kang and other officers detained Darryl Faitele, initially believing him to be Kelly. But shortly after detaining Faitele, Kang obtained Faitele's wallet and identification. Yet Kang continued to detain Faitele, which resulted in Faitele cursing repeatedly at Kang. Despite initially ignoring Faitele, Kang lost his temper and began cursing back at Faitele. Kang admitted that he spoke to Faitele in an unprofessional manner. Later, Kang again lost his temper and postured like he planned to fight Faitele

in response to a comment Faitele made. Kang sprinted towards Faitele intending to get in Faitele's face, but another officer intervened and stopped Kang. Kang wanted to hit Faitele but "knew that wouldn't be appropriate." Kang did not include his sprinting at Faitele and his use of profane language in his report.

Later in the month, Kang was placed on paid administrative leave because of complaints from Faitele about that incident. Kang received written notice of the investigation. SPD Sergeant Richard Wiggins interviewed Kang in connection with the investigation. In June 2020, a Disciplinary Review Board (DRB) within SPD reviewed the allegations against Kang. The allegations accused Kang of violating three SPD policies: (1) Conduct Unbecoming; (2) Treatment of Others; and (3) Reporting a Police Response to Aggression/Resistance/Force. The DRB sustained the allegations and recommended a review of the incident with additional training, job reassignment, and a five-day suspension.

The next step was for Kang to attend a telephonic "mitigation hearing"[1] with Police Chief Minter and the DRB. After the mitigation hearing, Minter reviewed the body camera footage from the incident, as well as Kang's disciplinary history, awards, and commendations. Minter sustained the DRB's determination that Kang violated those SPD policies but elected to deviate upward from their recommendation and terminate Kang's employment. Minter explained that he decided to terminate Kang's

---

[1] The mitigation hearing was a required procedure under a newly proposed "draft" policy, but it was not required by the policy in effect at the time.

employment because of Kang's aggressive demeanor towards Faitele, his use of foul language, Kang's threatening to charge Faitele with obstruction despite no evidence to support that charge, and the fact that he had looked at Faitele's identification and knew he was not Kelly yet continued to detain him anyway.

In July 2020, Kang received a notice of suspension before dismissal, a form to appeal the dismissal, and a DVD with evidence supporting the dismissal. The notice stated that the reason for Kang's dismissal was "Violation of City/Dept Policy," and under "Explanation," it listed the three violations of SPD General Orders: "Conduct Unbecoming," "Treatment of Others," and "Reporting a Police Response to Aggression Resistance Force." Per the notice, Kang would be suspended with pay for a few days and then terminated, unless he appealed the decision within twenty-four hours of receipt.

Kang appealed his termination in writing the same day. Kang met with Minter for an hour as part of the appeal process where he had the opportunity to explain why Kang believed termination was not appropriate. Ultimately, Minter denied Kang's appeal, determining that terminating Kang's employment was still appropriate. Kang appealed to the City Manager, Patrick Chang Monahan.

Kang obtained counsel for his appeal. At the appeal before Monahan, Kang spoke about his prior work history, including the lack of disciplinary record, and that he accepted responsibility for the allegations against him. Kang told Monahan that he would

accept a level of discipline for the charges, but that he did not think that termination was appropriate. Monahan testified that he spent about two hours reviewing the facts of the case before Kang's appeal hearing, including the body camera video and fact-finding report. Ultimately, Monahan upheld Minter's decision to terminate Kang's employment.

In April 2020, Kang had signed a group human resources complaint (Group Complaint) against Minter and submitted an individual complaint to HR. The Group Complaint focused on Minter's leadership. Kang never discussed the complaints with Minter. While Kang did not know if Minter ever saw the HR complaints, Monahan testified that Minter was generally aware of the Group Complaint and the Group Complaint received press coverage.

Kang sued the City and Minter. In his complaint, Kang alleged First Amendment retaliation claims against the City and Minter, Equal Protection claims against the City and Minter, procedural due process claims against the City and Minter, and a substantive due process claim against the City. The City moved for summary judgment on all Kang's claims against it, arguing that Kang had not shown a constitutional violation. Later, Minter moved for summary judgment on all Kang's claims against him, arguing he was entitled to qualified immunity.

For the City, the district court granted summary judgment, finding that Kang failed to show any constitutional violation by the City. For Minter, the district court granted summary judgment

because Kang failed to show any constitutional violation, so Minter was entitled to qualified immunity.  Kang timely appealed.

## II.    Standard of Review

"We review a district court's decision on summary judgment *de novo* and apply the same legal standard used by the district court, drawing all inferences in the light most favorable to the non-moving party and recognizing that summary judgment is appropriate only where there are no genuine issues of material fact."  *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).  "We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below."  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam).

## III.    First Amendment Retaliation Claims

Kang asserted a First Amendment retaliation claim against Minter and the City.  First Amendment retaliation claims are governed by a four-stage analysis.  *See Carter v. City of Melbourne*, 731 F.3d 1161, 1168 (11th Cir. 2013) (per curiam).

> First, we consider whether Plaintiff's speech was made as a citizen and whether it implicated a matter of public concern.  If this first threshold requirement is satisfied, we then weigh Plaintiff's First Amendment interests against [Defendant's] interest in regulating his speech to promote the efficiency of the public services it performs through its employees.  The above two issues are questions of law that are decided by the court.  The court's resolution determines

whether Plaintiff's speech is protected by the First Amendment.

If his speech is so protected, the third stage of the analysis requires Plaintiff to show that it was a substantial motivating factor in his termination. If Plaintiff is able to make this showing, the burden shifts to [Defendant] to prove that it would have terminated Plaintiff even in the absence of his speech. Because these final two issues, which address the causal link between Plaintiff's speech and his termination, are questions of fact, a jury resolves them unless the evidence is undisputed.

*Moss v. City of Pembroke Pines*, 782 F.3d 613, 617–18 (11th Cir. 2015) (internal quotation marks and citations omitted).

### a.    Minter

As to Minter, the district court found that he was entitled to qualified immunity on Kang's First Amendment retaliation claim because Kang failed to show a violation of his First Amendment rights. To prevail on a qualified immunity defense, the officers must establish that they were acting under their "discretionary authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). To rebut this defense, the plaintiff must show both that "the defendant's conduct violated a statutory or constitutional right" and the right was "clearly established." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (internal quotation marks omitted).

The district court found that Minter was acting in his discretionary authority, and so the burden shifted to Kang to show a constitutional violation. The district court held that Kang failed to meet his burden on the first threshold requirement because Kang was speaking as an employee on a private matter, criticizing Minter about his leadership practices and routine employment decisions. Kang disagrees with the district court and asserts that he was speaking as a citizen on a matter of public concern.

First, as to speaking as a citizen, "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "The central inquiry is whether the speech at issue owes its existence to the employee's professional responsibilities." *Moss*, 782 F.3d at 618 (internal quotation marks omitted). "Practical factors that may be relevant to, but are *not* dispositive of, the inquiry include the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job." *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1161 (11th Cir. 2015). Second, "[t]o fall within the realm of 'public concern,' an employee's speech must relate to 'any matter of political, social, or other concern to the community.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). The inquiry turns on "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48.

Kang spoke as an employee, not as a public citizen. Kang's speech concerned the subject matter of the employee's job and occurred in his workplace. *See King v. Bd. of Cnty. Comm'rs*, 916 F.3d 1339, 1345 (11th Cir. 2019) ("The court determined that King spoke as an employee, rather than a private citizen, for several reasons, including that she did not speak publicly and that her ordinary job duties were the motivation for her speech."). As the district court noted, the purpose of the Group Complaint was to address "Minter's leadership abilities, his treatment of his subordinates in SPD, and how that has affected the job performance" of those who signed the Group Complaint. The Group Complaint was also filed with the City's Human Resource Department, a part of Kang's workplace. While the media received a copy of the Group Complaint, there is no evidence that Kang communicated with the public about the Group Complaint.

And Kang was not speaking about a matter of public concern. The Group Complaint focused on the officers' views that Minter was a poor boss and critiqued Minter's leadership skills. The Group Complaint was a statement by police officers about their dissatisfaction and disagreement with how Minter ran the SPD. Kang's attempts to recast the Group Complaint as a matter of public concern by characterizing it as being about how Minter ran the SPD and the SPD's ability to police the community lacks merit. *See Boyce v. Andrews*, 510 F.3d 1333, 1344 (11th Cir. 2007) (per curiam) (An employee cannot "transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run."); *see also Morris v.*

*Crow*, 142 F.3d 1379, 1381 (11th Cir. 1998) (per curiam) ("The fact that such information may be of general interest to the public, however, does not alone make it of 'public concern' for First Amendment purposes."). The Group Complaint focused on officers, including Kang's private disagreement with how Minter ran the SPD.

Kang has failed to show that he was a citizen speaking on a matter of public concern, so he has not shown a First Amendment violation. Thus, we affirm the district court's grant of summary judgment for Minter on Kang's First Amendment retaliation claim.

### b.    The City

As to the City, the district court addressed its motion for summary judgment before Minter's motion for summary judgment. In its order, the district court assumed without deciding that Kang met the first threshold requirement that Kang was a citizen speaking on a matter of public concern instead of an employee speaking about practices of his boss. Even though the district court did not address the first threshold requirement—likely because the parties did not brief the issue as they did not here—we can still affirm for any reason in the record. *Thomas*, 506 F.3d at 1364. As discussed above, Kang has failed to show that he was a citizen speaking on a matter of public concern, so he has not shown a First Amendment violation. Thus, we affirm the district court's grant of summary judgment for the City on Kang's First Amendment retaliation claim.

### IV.    Equal Protection

Although Kang asserted Equal Protection claims against the City and Minter, Kang only appeals the district court's decision as to Minter on this claim.

To prevail on a race discrimination claim under the Equal Protection Clause,[2] the plaintiff can use either the *McDonnell Douglas*[3] burden shifting framework or show "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327–28 (11th Cir. 2011) (alteration adopted). Kang does not attempt to proceed under the *McDonnell Douglas* burden-shifting framework. Instead, Kang argues that he has presented enough evidence under the "convincing mosaic" framework for his claim to go to a jury.

"A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (internal quotation marks omitted).

---

[2] Claims brought under the Equal Protection Clause are analyzed under the same framework as Title VII. *See Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

To support his convincing mosaic argument, Kang points to: (1) five African American officers who he says were systematically treated better than he was but were not fired; and (2) the suspicious timing of his firing because it was during the height of the Black Lives Matter movement.

As to the five African American officers, Kang lists corresponding infractions to show that they were treated better than he was. But as part of this review, Kang must identify evidence to show that the comparators are "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc). Kang must show that the comparator "engaged in the same basic conduct (or misconduct) as the plaintiff"; was "subject to the same employment policy, guideline, or rule"; had "the same supervisor as the plaintiff"; and "share[d] the plaintiff's employment or disciplinary history." *Id.* at 1227–28. For four of the officers,[4] they were subject to the same employment policy and supervisor, but that is where the similarities end. The officers engaged in different misconduct than Kang, and Kang produced no evidence about the other officers' disciplinary history. Thus, Kang has failed to show how those officers were similarly situated to him.

Taking out the comparators leaves Kang with only the timing of his firing as his convincing mosaic evidence. Kang explained his termination occurred when the Black Lives Matter movement

---

[4] One officer's conduct did not occur when Minter was Police Chief.

was in full swing, which provided "Minter with additional political cover" to terminate Kang. But this is a conclusory statement. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."). Kang did not present to the district court nor to this court any evidence to infer that he was fired because of his race.

Kang has failed to meet his burden under the "convincing mosaic" framework. *Smith*, 644 F.3d at 1327–28. Thus, we affirm the district court's grant of summary judgment for Minter on Kang's Equal Protection claim.

## V.    Procedural Due Process Claims

Although Kang asserted procedural due process claims against the City and Minter, Kang only appeals the district court's decision as to the City on this claim.

The Due Process Clause of the Fourteenth Amendment requires a hearing before a public employee with a property right in his continued employment is terminated, but the hearing "need not be elaborate" and "need not definitively resolve the propriety of the discharge." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 545 (1986). The "employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546. "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.*

Kang argues that he did not receive notice of the allegations supporting his termination. Specifically, Kang faults the City for not detailing DRB's investigation into the Faitele incident before Minter went against DRB's initial recommendations and found termination a more appropriate recommendation. But Kang focuses on the wrong time frame. While the DRB's investigation was relevant to Minter's decision to terminate Kang, the decision was not made until later. And once the decision was made, Kang received all the process he was due under *Loudermill* before his termination. On July 17, 2020, Kang received a notice of suspension before dismissal, which stated that Kang was suspended for two days effective July 17, 2020, with dismissal being effective on July 21, 2020, if no notice of appeal was filed. In the notice, the City explained why it was terminating Kang's employment—violation of City/Department policy with references to which orders Kang had violated. Kang was not terminated on that day or even the effective dismissal date because Kang timely appealed that decision.

Kang received a DVD that identified the evidence that supported the decision to terminate Kang's employment. Then Kang had the opportunity to present his evidence to Minter, which included a presentation highlighting what Kang believed to be flaws in the reasons terminating him. And when Minter still decided that termination was appropriate, Kang had the opportunity to present his evidence to Monahan where he had counsel. Kang was terminated on July 30, 2020, over thirteen days after the notice of suspension after having two opportunities to address why termination was not appropriate. We agree with the district court that Kang

was given appropriate notice about the decision to terminate his employment and ample "opportunity to present his side of the story" to Minter and Monahan. *Loudermill*, 470 U.S. at 546.

Kang received all the pre-termination process required under *Loudermill*. Thus, the district court properly granted summary judgment for the City on Kang's procedural due process claim.

### VI.    Conclusion

Thus, we affirm the district court's grant of summary judgment for the City and Minter.

**AFFIRMED.**