[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10867

Non-Argument Calendar

_____

REBECCA BUTLER,

Plaintiff-Appellant,

*versus*

ECON-O-CHECK CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-01465-SCJ

_____

Before BRANCH, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Rebecca Butler appeals from the district court's grant of summary judgment to her former employer, Econ-O-Check Corporation ("Econ-O-Check"), on Butler's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* The district court found, in relevant part, that Butler failed to demonstrate (1) that Econ-O-Check's nondiscriminatory reasons for terminating her employment were pretextual, (2) a convincing mosaic of discrimination, and (3) that Econ-O-Check failed to accommodate her. After careful review, we affirm.

## I.    Background

In 1985, Butler was diagnosed with Crohn's disease. Since about 2008, Butler has received Remicade every seven weeks to treat her Crohn's disease. These treatments suppress Butler's immune system and fatigue her.

In 2015, Butler began working for Econ-O-Check as its customer service and call center director. Econ-O-Check provides an array of services to financial institutions and maintains a call center to field calls from its clients. Econ-O-Check permitted Butler to maintain her Remicade treatment schedule without issue. During her employment, Butler reported to Kim Boreham, who was Econ-O-Check's vice president of operations at all relevant times. Boreham, in turn, reported to Econ-O-Check's chief

executive officer Darren Hutcheson.  Boreham was aware of Butler's Crohn's disease diagnosis and Butler's need for treatment.

Butler's duties included managing and implementing call center strategies and operations, managing and training the customer service team, monitoring call center standards and service levels, and overseeing call center representatives.  Butler also dealt with vendors, maintenance, and the mailroom, and had several human resources ("HR") tasks like training new employees, negotiating a health insurance plan, and updating the employee handbook.  Butler's HR responsibilities exposed her to sensitive employee information and required a high level of trust from Econ-O-Check.

At Econ-O-Check, Butler worked with Amanda Reagan, who was a call center supervisor.  Butler and Reagan worked closely together, and after Butler was fired, Econ-O-Check assigned her call-center duties to Reagan.

In March 2020, some of Econ-O-Check's employees, including Butler, began working from home in response to the COVID-19 pandemic.  Butler worked from home from mid-March 2020 until her termination in January 2021.

In April 2020, Boreham and Butler drafted a return-to-office plan.  This plan accounted for high-risk employees, of which Butler was one of four identified.  None of these four high-risk employees returned to working in the office during 2020.  Apart from Butler, the other high-risk employees worked from home until May 2021.

By contrast, Econ-O-Check's other employees began returning to the office to some degree in the summer of 2020.

Around Thanksgiving 2020, Boreham began to ask Butler when she would return to the office. Then, on December 22, 2020, Butler received a performance-based bonus. On December 23, 2020, Butler told Boreham that she would need to continue working from home until she received a COVID-19 vaccine. At some point in late 2020, Boreham relayed this information to Hutcheson.

In the background of these events, two other events occurred that, in Boreham's view, reflected poorly on Butler's job performance. First, in October 2020, Econ-O-Check received a complaint[1] from an institutional client, Investors Bank. Boreham complained that Butler did not tell her about the complaint until November 24, 2020, though Butler contends Boreham could have discovered the complaint on her own at any time. In her declaration, Boreham also said she was dissatisfied by how long it took for Butler to resolve the complaint, although Butler contends that another employee was responsible for resolving the complaint. Regardless, Econ-O-Check resolved Investors Bank's complaint by December 16, 2020.

Second, on December 10, 2020, the phones in Econ-O-Check's call center went down. Butler did not contact Boreham

---

[1] The substance of Investors Bank's complaint is immaterial to this appeal but "involved identity fraud resolution."

directly to inform her of this issue, which Boreham believed Butler should have done.  Instead, Econ-O-Check's chief technology officer told Boreham about the phones being down.  Because of these events, and because Boreham felt Butler was "undermining" her "by having conversations behind [Boreham's] back with other employees,"[2] Boreham lost trust in Butler.

Around this same time in late 2020, Econ-O-Check planned to rehire a former employee, Sindy Paez.  Paez had served as one of Hutcheson's key executive assistants over the prior decade and was a trusted employee.  In early 2021, Hutcheson offered Paez a job as an HR and facilities manager.  Upon her hiring, Paez took over Butler's facilities and HR responsibilities.

On January 5, 2021, Boreham told Butler that Econ-O-Check was eliminating Butler's position due to restructuring.  Boreham decided to terminate Butler's employment, believing that Butler's call-center duties had become redundant with Reagan's responsibilities and that Butler's HR duties would become redundant with Paez's imminent return.

After she was fired, Butler brought this suit.  Butler asserted several claims under the ADA: "regarded-as" disability discrimination, failure to accommodate, "actual" disability discrimination, and retaliation for firing her after she asked to keep

---

[2] Those other employees included Maria Goble and Sarah Stavely.

working remotely until vaccinated.[3]    After discovery, Econ-O-Check moved for summary judgment on all of Butler's claims. The magistrate judge issued a report and recommendation ("R&R") that the district court grant Econ-O-Check's motion for summary judgment.

The R&R, in relevant part, determined that Butler's discrimination and retaliation claims failed because (1) Econ-O-Check offered legitimate, nondiscriminatory reasons for firing Butler, and (2) Butler failed to show that these reasons were pretextual.  The R&R also concluded that Butler failed to present a convincing mosaic of discrimination.  Finally, the R&R found that Butler failed to show that Econ-O-Check failed to accommodate her.  The district court overruled Butler's objections to the R&R, adopted the R&R in full, and granted Econ-O-Check summary judgment.  Butler timely appealed.

---

[3] "To state a disability discrimination claim, a claimant must allege that she was a 'qualified individual' who suffered an adverse employment action because of her 'disability' as those terms are defined by the ADA." *Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019).  The ADA defines "disability" to mean, in relevant part, "a physical or mental impairment that substantially limits one or more major life activities of such individual" or "being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Accordingly, a plaintiff can bring an ADA-discrimination claim based on a disability she actually has (an "actual" disability-discrimination claim) or based on a disability that her employer regards her as having (a "regarded-as" disability-discrimination claim).  *See STME, LLC*, 938 F.3d at 1314.

24-10867                Opinion of the Court                7

## II.    Standard of Review

"We review the district court's order granting summary judgment de novo, viewing all the evidence, and drawing all reasonable inferences in favor of [Butler]." *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016) (quotation omitted).  "Summary judgment is only proper if there are no genuine issues of material fact, and [Econ-O-Check] is entitled to judgment as a matter of law." *Id.*  "When factual conflicts arise, we must credit the non-moving party's version." *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1185 (11th Cir. 2024).

## III.    Discussion

Butler argues that she (1) demonstrated that Econ-O-Check's nondiscriminatory and nonretaliatory reasons for firing her were pretextual, (2) presented a convincing mosaic of discrimination, and (3) demonstrated that Econ-O-Check failed to accommodate her.  Each of Butler's arguments fails in turn.

>    A.    *Butler failed to present evidence that Econ-O-Check's legitimate, nondiscriminatory reasons for firing her were pretextual*

For each of Butler's disability-discrimination and ADA-retaliation claims, the district court determined that (1) Butler met her burden to establish her *prima facie* claims,[4] (2) Econ-O-Check

---

[4] In a single sentence, Econ-O-Check cursorily argues that Butler failed to establish her *prima facie* cases for each of these claims.  Econ-O-Check has therefore waived the issue.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678,

demonstrated legitimate, nondiscriminatory and nonretaliatory reasons for firing Butler, and (3) Butler failed to show that those reasons were pretextual. Accordingly, the district court granted summary judgment to Econ-O-Check on those three claims. Butler argues on appeal that she demonstrated that Econ-O-Check's nondiscriminatory and nonretaliatory reasons for firing her were pretextual. We disagree.

The ADA prohibits, in relevant part, employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). We evaluate disability-discrimination and ADA-retaliation plaintiffs' "evidence under the familiar *McDonnell Douglas*[5] burden-shifting framework." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215, 1219 (11th Cir. 2021). Under that framework, the plaintiff must first establish her *prima facie* case of disability discrimination or retaliation. *Id.* at 1215–16, 1219.[6]

---

680 (11th Cir. 2014). Regardless, because we conclude that Butler failed to show pretext, we need not revisit Butler's *prima facie* cases.

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[6] Although not relevant to this appeal, a plaintiff establishes a *prima facie* case of retaliation under the ADA by showing that "(1) she participated in conduct that the [ADA] protects; (2) she suffered an adverse employment action; and (3) the protected conduct and the adverse employment action are causally related." *Id.* at 1219. A plaintiff establishes a *prima facie* case of disability discrimination by showing "that she (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of her disability." *Id.* at 1215–16. As discussed, the plaintiff may establish she is disabled by showing that she has

"The prima facie showing entitles the plaintiff to a rebuttable presumption of intentional discrimination." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). "The defendant then rebuts that presumption (if it can) by offering evidence of a valid, non-discriminatory justification for the adverse employment action." *Id.* "Once that justification is offered, the presumption of discrimination falls away and the plaintiff tries to show not only that the employer's justification was pretextual, but that the real reason for the employment action was discrimination." *Id.*

"A plaintiff cannot rebut a [legitimate, nondiscriminatory] reason by simply quarreling with the wisdom of that reason or substituting her business judgment for that of the employer." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1352 (11th Cir. 2022) (quotation omitted). "The plaintiff instead must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quotation omitted). And where the employer proffers multiple legitimate reasons for its adverse employment action, the plaintiff must rebut each of the reasons to survive a motion for summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024–25, 1037 (11th Cir. 2000) (*en banc*).

Here, Econ-O-Check proffered a legitimate, nondiscriminatory, nonretaliatory reason for firing Butler:

_____

"an actual disability" or is "regarded as having one." *STME, LLC*, 938 F.3d at 1314 (quotation omitted); *see* 42 U.S.C. § 12102(1)(A), (C).

Reagan's responsibilities and Paez's imminent hiring rendered Butler's position redundant.[7]  We agree with the district court that Butler failed to demonstrate that this reason was mere pretext for discrimination or retaliation.

First, Butler argues that the reassignment of her job responsibilities to non-disabled individuals (Reagan and Paez), and the fact that Butler was not considered for Paez's job, shows pretext.  But this argument does not move Butler from her *prima facie* case to showing pretext.  *See Tynes*, 88 F.4th at 944.  Once Econ-O-Check explained that it fired Butler because Butler's responsibilities could be or were being done by other employees, Butler had to offer evidence *contradicting* that explanation.  *See Patterson*, 38 F.4th at 1352 (requiring the plaintiff to "demonstrate . . . weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered reason to show pretext (quotation omitted)).  By merely pointing out that Reagan and Paez are not disabled, Butler fails to show that her position did not become redundant.  Thus, she has not demonstrated pretext. *See id.*

---

[7] Econ-O-Check advanced other legitimate reasons for terminating Butler's employment, such as Butler losing Boreham's trust by talking behind Boreham's back and by failing to keep Boreham apprised of the Investors Bank complaint and the call center phones going down.  Because we conclude, however, that Butler failed to rebut the evidence that her position became redundant, we decline to reach the parties' arguments concerning Econ-O-Check's other proffered reasons. *See Chapman*, 229 F.3d at 1024–25, 1037.

Second, Butler argues that Econ-O-Check's reasons for firing her have shifted, which demonstrates pretext. True, if an employer provides "inconsistent reasons" for firing an employee, an inference of discrimination may be created. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004). But the employer's reasons must actually be inconsistent; mere additional reasons do not show pretext. *See Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998); *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1458 (11th Cir. 1997).

Here, Econ-O-Check has not changed its reasons for terminating Butler's employment. Both documents that Butler cites to support her argument state that Butler's employment was terminated after Butler became redundant. Boreham's declaration elaborated additional, not inconsistent, reasons for terminating Butler's employment based on Boreham's views of Butler's job performance. Accordingly, this evidence does not show that Econ-O-Check's reasons were pretext for discrimination or retaliation. *See, e.g.*, *Tidwell*, 135 F.3d at 1428 ("At most, the jury could find that performance was an additional, but undisclosed, reason for the decision; the existence of a possible additional non-discriminatory basis for Tidwell's termination does not, however, prove pretext.").

Finally, Butler tries to show pretext by citing the "suspicious timing" of Econ-O-Check's decision to terminate her employment. *See Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 925–26 (11th Cir. 2018) (observing that we can infer pretext from, in part, the "suspicious

timing of [a] termination" immediately after protected conduct). In support, Butler claims that she was fired within a month of her protected conduct, which was telling Boreham that she would work remotely until getting vaccinated against COVID-19. The timing, however, of Butler's termination is not "suspicious" such that we can infer that Econ-O-Check's reasons for Butler's termination are pretextual. *See Jefferson*, 891 F.3d at 925–26. Butler worked remotely for nine months before her termination while non-disabled employees began returning to the office the previous summer, and other high-risk employees continued working remotely for four months after Butler's termination. These facts vitiate any inference that the timing of Butler's termination can show that she was fired for asking to work remotely. *Cf. Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1316–17 (11th Cir. 2007) (holding that an employee's protected conduct and adverse employment action were not sufficiently temporally close where the adverse employment action occurred "more than four and one-half months after" the protected conduct).

And in any event, we have explained that "[w]hile close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1137 n.15 (11th Cir. 2020) (*en banc*). Because Butler's "other evidence"—*i.e.*, Econ-O-Check's purportedly shifting reasons for her termination and the reassignment of her duties—fails to show pretext, her argument about temporal proximity demonstrating pretext also is

24-10867              Opinion of the Court                13

"insufficient." *Id.* Accordingly, Butler has failed to demonstrate a genuine dispute of material fact that Econ-O-Check's nondiscriminatory and nonretaliatory reasons for terminating her employment were pretext for discrimination or retaliation.

B.    *Butler failed to present a convincing mosaic of discrimination*

Next, Butler contends that she presented sufficient evidence to create a "convincing mosaic" of discrimination. Specifically, Butler argues that the record shows that Econ-O-Check systematically treated non-disabled comparators better than her and that Econ-O-Check failed to follow its progressive disciplinary policy when it terminated her employment.[8] This evidence, however, fails to create a convincing mosaic of discrimination.

"A plaintiff who cannot satisfy [the *McDonnell Douglas*] framework may still be able to prove her case with what we have sometimes called a 'convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Tynes*, 88 F.4th at 946 (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)); *see Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310–11 (11th Cir. 2023). "But a 'convincing mosaic' is a metaphor, not a legal test and not a framework." *Berry*, 84 F.4th at 1311. "A 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable

---

[8] Butler also cites the timing of her termination, but as discussed, the timing of Butler's termination was not suspicious on this record.

factfinder to infer intentional discrimination in an employment action . . . ." *Tynes*, 88 F.4th at 946. Ultimately, "the *McDonnell Douglas* framework and the convincing mosaic approach are two paths to the same destination—the ordinary summary judgment standard." *McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024). The difference is that "when we use what we have called the convincing mosaic standard, we look beyond the prima facie case to consider all relevant evidence in the record to decide the ultimate question of intentional discrimination." *Tynes*, 88 F.4th at 947.

"We have identified three nonexclusive categories of circumstantial evidence that can raise a reasonable inference of unlawful conduct: evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent may be inferred; evidence of systematically better treatment of similarly situated employees; or evidence that the employer's justification for its action is pretextual." *Berry*, 84 F.4th at 1311; *see also Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022). If a plaintiff seeks to prove her case by citing a comparator, the "comparator employee must be similarly situated in all material respects" to the plaintiff. *Tynes*, 88 F.4th at 947 (quotation omitted). But even if a plaintiff's "comparators were insufficient to establish a prima facie case" under the *McDonnell Douglas* framework, they may still be "relevant to the ultimate question of intentional discrimination." *Id.* Thus, in evaluating a plaintiff's convincing-mosaic argument, we may look to comparator evidence absent "a strict comparator." *Jenkins*, 26 F.4th at 1251.

For example, in *Jenkins*, we rejected the use of "Jones" as a proper comparator under the *McDonnell Douglas* framework "because the circumstances surrounding his misconduct were not the same or substantially similar as Jenkins." 26 F.4th at 1250. But we accepted Jones as a relevant comparator for convincing-mosaic purposes. *See id.* at 1250–51. Specifically, Jenkins and Jones were both crane operators who reported to the same supervisor and "committed a Rule A-6 violation," but the supervisor only fired Jenkins; Jones "remained employed." *Id.* We concluded that a genuine dispute of material fact existed concerning whether Jenkins and Jones's supervisor heard Jones's Rule A-6 violation and, if so, how the supervisor reacted. *Id.* at 1251.

Turning to Butler's evidence, Butler argues that Sarah Stavely and Maria Goble were non-disabled comparators that Econ-O-Check treated better than Butler. Specifically, Stavely and Goble also "texted behind Ms. Boreham's back" but were not fired. (quotation omitted). Crucially, however, Butler cites no evidence that Boreham was aware of Stavely's and Goble's messages, and the record shows that neither Stavely nor Goble reported to Boreham. And it was Boreham, after all, who decided to terminate Butler's employment. Absent evidence that Boreham knew of Stavely's and Goble's messages and that Boreham could fire either of them, Stavely and Goble are not relevant comparators. *Cf. Jenkins*, 26 F.4th at 1250–51. Accordingly, we cannot infer discrimination from the fact that Boreham did not fire either Stavely or Goble.

Butler also argues that Econ-O-Check's failure to follow its progressive disciplinary policy helps create a convincing mosaic of discrimination.  But we have explained that an employer's failure to follow a progressive discipline policy does not show discrimination if the policy provides "the flexibility to deviate from the normal procedures if the circumstances so require," and "the nature of the situation" at issue warrants deviation.  *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1244 & n.4 (11th Cir. 2010).  As in *Schaaf*, Econ-O-Check's disciplinary process explicitly reserved Econ-O-Check's "right to combine or skip steps in [its disciplinary] process depending on the facts of each situation and the nature of the offense."  And Econ-O-Check's disciplinary process does not cover a situation where, as here, an employee has become redundant or has lost the trust of her supervisor; accordingly, deviation was warranted.  Thus, on this record, Butler has failed to demonstrate a genuine dispute of material fact as to intentional discrimination based on her disability.  *See id.*

C.    *Butler did not show that Econ-O-Check failed to accommodate her*

Finally, Butler appeals the district court's grant of summary judgment to Econ-O-Check on Butler's failure-to-accommodate claim.  The district court granted summary judgment to Econ-O-Check on this claim after finding that Econ-O-Check reasonably accommodated Butler.  We agree with the district court.

The ADA prohibits, in relevant part, "not making reasonable accommodations to the known physical or mental

limitations of an otherwise qualified individual with a disability who is an . . . employee." 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure-to-accommodate claim under the ADA, the plaintiff must demonstrate "that (1) she was a qualified individual with a disability; (2) she made a specific request for a reasonable accommodation; and (3) her employer . . . failed to provide a reasonable accommodation, or engage in the requisite interactive process in order to identify a reasonable accommodation." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020).[9] As to the second element, "the employer's duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made by an employee." *Id.* at 1022 (alteration adopted) (quotation omitted). And the requirement that a requested accommodation be "reasonable" means "an employer is not required to accommodate an employee in *any* manner that the employee desires—or even provide that employee's preferred accommodation." *Id.* (emphasis in original).

Here, Butler has not shown that Econ-O-Check failed to reasonably accommodate her disability. Butler argues that in December 2020 she requested to work from home until she was vaccinated against COVID-19, but Econ-O-Check did not accommodate that request. Econ-O-Check, however, had allowed

---

[9] *D'Onofrio* concerned a claim under the Florida Civil Rights Act of 1992 ("FCRA"). *See id.* at 1015. But we explained that "[g]iven the parallel structure of the [FCRA and ADA], this Court analyzes state-law disability discrimination claims under the FCRA using the same framework as it does for claims made under the [ADA]." *Id.* at 1021.

Butler to work remotely for the prior nine months even though other employees began returning to the office in the summer of 2020. During that time, Econ-O-Check expressed a desire to have all employees return to the office. But according to Butler, nobody ever told her, or even suggested to her, that she would be fired if she did not return to the office. Indeed, Butler was one of four "high risk" employees, and none of the other high-risk employees returned to the office until May 2021—almost a year after other employees began returning to the office. Thus, the evidence demonstrates that Econ-O-Check (1) already was accommodating Butler, (2) did not make Butler's employment contingent on her forfeiting that accommodation, and (3) continued to provide the same accommodation to other disabled employees for months after Butler's termination. On this record, we cannot say Econ-O-Check failed to provide Butler her requested reasonable accommodation.

## IV.    Conclusion

For the foregoing reasons, the district court properly granted summary judgment to Econ-O-Check.

**AFFIRMED.**