**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-13764
_____

LARRY COLEMAN,
SHAUNA R. NATHAN, AS ADMINISTRATOR OF THE
ESTATE OF CHESTER COLEMAN,
JESSICA SELTZER, AS ADMINISTRATOR OF THE ESTATE
OF FREDDIE SELTZER,

*Plaintiffs-Appellants,*

CHESTER COLEMAN, et al.,

*Plaintiffs,*

*versus*

MORRIS-SHEA BRIDGE COMPANY, INC.,
RICHARD SHEA,

*Defendants-Appellees,*

RICHARD J. SHEA, III,

*Defendant.*

2                    Opinion of the Court                    21-13764

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:18-cv-00248-LSC
_____

_____

No. 22-10239
_____

LARRY COLEMAN,

*Plaintiff-Appellant,*

FREDDIE SELTZER, et al.,

*Plaintiffs,*

*versus*

MORRIS-SHEA BRIDGE COMPANY, INC.,
RICHARD SHEA,

*Defendants-Appellees,*

RICHARD J. SHEA, III,

*Defendant.*

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:18-cv-00248-LSC
_____

Before BRANCH, LUCK, Circuit Judges, and BERGER,[*] District Judge.

PER CURIAM:

This is a consolidated appeal, arising from three brothers' employment at a construction contracting company. Appellants, Larry Coleman, Chester Coleman, and Freddie Seltzer, seek review of the trial court's Order granting summary judgment in favor of Appellees, Morris-Shea Bridge Company, Inc. and its President, Richard J. Shea, Jr., and Vice President, Richard J. Shea, III, on their race and age discrimination claims and the award of certain fees. Three questions are before the Court. First, whether the district court properly granted summary judgment for Appellees on the brothers' discrimination claims. Second, whether the district court properly applied judicial estoppel retroactively to the brothers' already-adjudicated summary judgment claims. And third, whether the district court abused its discretion in awarding Appellees certain prevailing party costs. After careful review, and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

### A. Facts

Morris-Shea Bridge Company, Inc. ("MSB") is a heavy construction contractor that specializes in deep foundation work related to bridges, highways, and buildings. Richard J. Shea, Jr.

---

[*] Honorable Wendy Berger, United States District Judge for the Middle District of Florida, sitting by designation.

("Dick Shea") is President of MSB, and his son, Richard J. Shea, III, is Vice President.

For over twenty-five years, three African American brothers, Larry Coleman, Chester Coleman, and Freddie Seltzer, worked at MSB until their termination in April 2017. The parties dispute Larry Coleman's job title prior to his separation of employment with MSB. Generally, however, his responsibilities varied over the years from that of a laborer, pile-driving foreman, or superintendent. Seltzer's last position at the company was a welder on pile driving jobs. Chester Coleman's last position was a crane operator. At the time of their termination, Larry, Chester, and Freddie[1] were all over the age of fifty.

Due to lack of work, MSB would sometimes assign employees to special projects. These projects were not typical revenue producing work but a way to keep employees from being laid off between revenue generating projects. After their last revenue producing project, Larry, Chester, and Freddie were assigned to two special projects: Mountain Lake Farms and Richard Shea's residence ("Shea Residence Project"). Despite these projects involving work that could have been done by laborers at a lesser pay, the brothers received their regular wages. However, during the projects, Appellees observed a general decline in their work ethic.

---

[1] Because Larry and Chester share the same last name, we refer to the brothers by their first names, consistent with the parties' usage.

On April 10, 2017, the brothers were working at the Shea Residence Project, along with Shea Jr. and superintendents, Lee Dubberly and Jimmy Harris. Employees working on the project were provided a thirty-minute lunch break. On that day, Chester and Freddie went out for lunch. While the parties dispute whether Chester and Freddie returned late, Dick Shea believed they did and, consequently, sent Chester and Freddie home. And because Larry drove to work with his brothers, he decided to leave with them. When he returned the next day, Shea instructed Harris to send Larry home as well. The parties dispute whether this constituted termination.

### B. Procedural History

Larry Coleman, Chester Coleman, and Freddie Seltzer (collectively, "Appellants") brought a twenty-two count amended complaint against MSB, Richard J. Shea, Jr., and Richard J. Shea, III (collectively, "Appellees"), alleging a number of discrimination claims related to their employment and termination pursuant to Title VII, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"). Larry also brought a claim for violation of the Fair Labor Standards Act ("FLSA").

The district court granted Appellees' motion for summary judgment on all but Larry's FLSA claim. As relevant to this appeal, the district court determined Appellants failed to present prima facie cases of racial discrimination as to their compensation and termination claims because they did not provide proper comparators. But even assuming Appellants had established prima facie cases of

racial discrimination as to their compensation and termination, Appellees properly rebutted that presumption with evidence of race-neutral rationales for its decision, which Appellants failed to show were pretextual. The district court also determined Appellants failed to provide evidence that created a mosaic of discrimination with respect to their racial discrimination in termination claims. And while Larry and Chester stated a prima facie case for age discrimination as to their termination, Appellees properly rebutted that presumption with age-neutral rationales for its decision, which, again, Appellants failed to show were pretextual. Accordingly, the trial court found that Appellants were unable to show that there were genuine issues for trial with respect to their race and age discrimination claims and granted summary judgment in Appellees' favor.

Thereafter, Larry's FLSA claim proceeded to trial. At trial, the district court determined that Larry and Chester's testimony regarding Larry's work duties conflicted with their representations at summary judgment,[2] which prompted the court to enter a separate order supplementing its summary judgment order and applying judicial estoppel to Larry and Freddie's claims on which summary judgment was already granted, thereby dismissing them with

---

[2] At summary judgment, Larry and Chester testified that Larry was a superintendent. At trial, however, they testified to the effect that Larry was not a superintendent. The trial testimony was relevant to determining whether Larry should have been paid overtime as an hourly employee, rather than a salaried supervisor.

prejudice. Subsequently, the jury found Appellees not liable of violating the FLSA, and the district court awarded Appellees $13,374.01 in prevailing party costs. This appeal followed.

## II.    DISCUSSION

Appellants appeal the grant of summary judgment on the following claims: (1) Larry and Freddie's racial discrimination in compensation claims under Title VII and § 1981, (2) Appellants' racial discrimination in termination claims under Title VII and § 1981, and (3) Larry and Chester's ADEA termination claims. Larry and Chester also appeal the district court's application of judicial estoppel, and Larry appeals the award of costs. Finding no error in the district court's summary judgment ruling and award of costs, we affirm.

### A.  Appellants' Discrimination Claims

We review the grant or denial of summary judgment de novo. In doing so, we view "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Hill ex rel. BHJ v. Cundiff*, 797 F.3d 948, 967 (11th Cir. 2015). "Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Hallmark Devs., Inc. v. Fulton Cnty.*, 466 F.3d 1276, 1283 (11th Cir. 2006)).

We begin with the legal framework applicable to Appellants' claims. Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [his]

race." 42 U.S.C. § 2000e-2(a)(1).[3] The Supreme Court's decision in *McDonnell Douglas Corp. v. Green* sets forth a three-part evidentiary burden shifting framework that can be utilized at summary judgment. 411 U.S. 792, 802–04 (1973). First, the plaintiff must establish a prima facie case of discrimination by demonstrating that: "(1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified to perform the job in question; and (4) his employer treated similarly situated employees outside his class more favorably." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (quotation omitted). Then, the employer must "articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer does so, the plaintiff may demonstrate that the proffered reason is pretextual. *Id.* at 804.

Importantly, the framework is a "*procedural* device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993). Rule 56 ultimately provides the summary judgment standard, and *McDonnell Douglas* does not supplant that.

---

[3] Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

21-13764                Opinion of the Court                9

In our Court's recent decision in *Ismael v. Roundtree*, 161 F.4th 752 (11th Cir. 2025), we clarified how *McDonnell Douglas* operates at summary judgment.[4] When a plaintiff establishes a prima facie case and the defendant fails to put forth evidence of a legitimate reason, summary judgment in the plaintiff's favor is warranted. *Id.* at 764. Or where this occurs when only the defendant moved for summary judgment, the motion must be denied. *Id.* at 764 n.5. However, if the defendant "successfully rebuts the presumption, 'the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant'" and "simply drops out of the picture." *Id.* at 764 (quoting *Hicks*, 509 U.S. at 510, 511).

Nonetheless, merely because the plaintiff is not entitled to this presumption does not prohibit him from surviving summary judgment and proceeding to trial. Rather, at this point, the inquiry is whether "the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). This reflects the ordinary Rule 56 summary judgment standard. *See Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 951 (11th Cir. 2023) (Newsom, J., concurring) ("The convincing-mosaic standard . . . is basically just Rule 56 in operation.").

---

[4] This case was fully briefed and argued prior to this Court's decision in *Ismael*. However, because our decision in the instant case would be the same regardless of whether we applied our recent precedent, we analyze this action under the guidance set forth in *Ismael*.

But even when a plaintiff fails to establish a prima facie case, the inquiry does not end. Where a defendant successfully rebuts the prima facie case with evidence of a legitimate reason for the adverse action, the plaintiff is simply not entitled to a presumption of discrimination. *Id.* at 765. He may still produce evidence of a material issue of triable fact with respect to discrimination. *Id.*

To the extent Larry and Freddie argue *McDonnell Douglas* is inapplicable because mixed-motive claims are at issue in this case, we disagree. A plaintiff has available to him two legal theories in a Title VII case: the single-motive theory and mixed-motive theory. *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016). Under a mixed-motive theory, an employee need only show that illegal bias "was a motivating factor" for an adverse employment action, despite other factors also motivating the action. *Id.* (quoting 42 U.S.C. § 2000e–2(m)). "In contrast, single-motive claims . . . require a showing that bias was the true reason for the adverse action." *Id.*

While it is true that "the *McDonnell Douglas* framework is not applicable to mixed-motive discrimination claims based on circumstantial evidence," *id.* at 1245, Larry and Freddie failed to properly raise a mixed-motive theory before the district court. It is an open question in this Circuit whether a plaintiff must plead a legal theory in his complaint, *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1337 n.2 (11th Cir. 2023), but Appellants failed to properly raise the theory even at summary judgment.

With respect to the compensation claims, Larry and Freddie made no mention of a mixed-motive approach, addressing only proper comparators under *McDonnell Douglas*. Nor did they sufficiently raise the theory as to their race-based termination claims. Appellants devoted a large portion of their summary judgment briefing to the *McDonnell Douglas* and convincing mosaic frameworks. But any articulation of the mixed-motive theory was relegated to a footnote and contained no application to the instant case.[5] "We decline to address . . . arguments which were not fairly presented to the district court in opposing summary judgment." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F. 3d 587, 591 n.2 (11th Cir. 1995); *see also Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F. 2d 1435, 1446 n.16 (11th Cir. 1987) (stating that a single footnote in the initial brief did not sufficiently preserve the issue).

We will not consider arguments raised for the first time on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (collecting cases).

### i. Larry and Freddie's Compensation Claims

Larry and Freddie claim the district court erred in its analysis of their discrimination in compensation claims. "To state a prima facie case of [racial] discrimination in compensation, a plaintiff must establish that (1) [he] belongs to a racial minority; (2)

---

[5] The substance of Appellants' summary judgment arguments similarly indicates they did not raise a mixed-motive theory. Appellants insisted there was no legitimate reason for their termination—the hallmark of a single-motive theory. *See Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1193 n.6 (11th Cir. 2024).

[he] received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) [he] was qualified to receive the higher wage." *Cooper v. S. Co.*, 390 F.3d 695, 734–35 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–58 (2006).

The primary issue on appeal is whether Larry and Freddie presented similarly situated comparators.

It is a plaintiff's burden to demonstrate that he and his comparators are similarly situated "in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) [hereinafter *Lewis I*]. While this is a case-by-case analysis, "ordinarily[,] a similarly situated comparator and the plaintiff will: have engaged in the same basic conduct or misconduct, be subject to the same employment policies, have the same supervisor(s), and share an employment or disciplinary history." *Jenkins*, 26 F.4th at 1249 (citing *Lewis I*, 918 F.3d at 1227–28). Indeed, there may exist some material differences between the comparators, *Ismael*, 161 F.4th at 764, but a "meaningful comparator analysis" still must be present, *Lewis I*, 918 F.3d at 1224.

Below, Appellants relied on a 2016 Census Spreadsheet outlining employees' race, classification, title, and pay rate. They argued that Freddie earned $20.50 per hour, while Elmer Sullivan, who is white, held the same classification and title but received $25 per hour. And Larry, although his classification is disputed, is listed as a foreman earning $35 per hour. Appellants identified nine white foremen earning $40–60 per hour. The district court held that the

comparators were not similarly situated in all material respects. We agree.

Our precedent is clear that "a valid comparison will turn not on formal labels, but rather on substantive likeness." *Lewis I*, 918 F.3d at 1228. Larry and Freddie offer no more evidence on appeal than they did below, relying solely on their comparators' titles and classifications. They point to no evidence of the comparators' licensure, skill level, or employment history. We have frequently found comparators invalid despite sharing a formal title with the plaintiff. *See, e.g.*, *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 998 (11th Cir. 2025) (holding that plaintiff's comparators were invalid despite sharing a job title as doctor because they had different supervisors and employment policies, and engaged in different misconduct); *Anthony v. Georgia*, 69 F.4th 796, 805–06 (11th Cir. 2023) (holding that plaintiff's comparator was invalid despite both being state troopers because they held different ranks and handled their misconduct differently).

Despite Larry and Freddie not affirmatively establishing a prima facie case, Appellees nonetheless distinguish Larry from his comparators. They present evidence that Larry worked exclusively as a pile-driving foreman, whereas the comparators were drill foremen, drill and pile-driving foremen, or not foremen at all. Larry attempts to rebut this, directing us to his declaration that he supervised a drilling crew "in or around 2014." But this single occasion predates the 2016 Census Spreadsheet Appellants rely on by

approximately two years.  Without any evidence beyond formal job titles, race, and pay, Larry and Freddie failed to establish comparators that were similarly situated in all material respects.[6]

Unable to establish a prima facie case for discrimination in their compensation, Larry and Freddie are not entitled to a presumption of discrimination.  Thus, we look to the record as a whole to determine whether there exists a convincing mosaic of circumstantial evidence that would allow a jury to infer discrimination in Larry and Freddie's compensation.

Upon review, the only argument Larry and Freddie presented to the district court and on appeal is that their comparators' pay and race demonstrates a triable issue of fact as to discrimination.  For reasons already stated, the proffered comparison is insufficient.  Accordingly, we affirm the district court's ruling on Larry and Freddie's compensation claims.

### ii.  *Appellants' Termination Claims*

All Appellants challenge the district court's ruling on their race-based termination claims, and Larry and Chester alone challenge the court's ruling on their age-based termination claims.  We begin with the racial discrimination claims.

The district court held that Appellants did not state a prima facie case for racial discrimination under step one of *McDonnell*

---

[6] Because Larry and Freddie cannot establish a prima facie case, we need not address their argument that Richard J. Shea III's declaration identifying individuals who could be proper comparators is a sham affidavit.

*Douglas*. Assuming arguendo that Appellants did satisfy this step, however, Appellees provided evidence of a legitimate, non-discriminatory reason for Appellants' termination, namely, their decline in work ethic.[7]

Dick Shea testified that the brothers were "late to work, not working diligently, and taking too long for lunch**."** He further testified that he observed Larry arrive late to work "maybe ten percent of the time." Jimmy Harris, Appellants' supervisor, also testified that he had observed Appellants taking long lunch breaks and warned them of the thirty-minute policy.

Thus, Appellants are not entitled to a presumption of discrimination, and we look to whether they presented a mosaic of racial discrimination in their termination. We conclude they did not.

Appellants primarily attempt to meet their burden by showing that the proffered reason for termination was pretextual for race discrimination. While not the sole method to demonstrate a mosaic of discrimination, "[a] showing of pretext (or lack thereof) would certainly be relevant" to the analysis. *Ismael*, 161 F.4th at 764. "Our precedent specifically describes evidence of pretext as *a subset* of potentially relevant circumstantial evidence." *Id.* at 762

---

[7] In their Reply briefs, Larry and Freddie claim Appellees did not argue below that there was a decline in work ethic. We disagree. Appellees sufficiently asserted this as their reason for sending Appellants home in their Motion for Summary Judgment.

(citing *Yelling*, 82 F.4th at 1242).  "In determining whether a proffered reason is unworthy of credence, a court will consider weaknesses, implausibilies, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1245 (11th Cir. 2020) (quotation omitted).  But pretext cannot be based on speculation, conclusory assertions, or evidence that is merely colorable.  *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

Appellants primarily argue that pretext is shown by evidence that they were not late returning from lunch.  This argument fails.

"The inquiry into pretext centers on the employer's beliefs . . . not on reality as it exists outside the decision maker's head."  *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1291 n.7 (11th Cir. 2018) (quoting *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010)).  Regardless of whether Chester and Freddie were in fact late from lunch, all proffered evidence points to Dick Shea *perceiving* them to be late.  Chester argues that Dick Shea knew they were not late because Larry told him so.  However, simply because Larry told Shea this does not prove that Shea believed Larry.  In fact, the evidence establishes that he believed the brothers *were* late.

Larry and Freddie argue that Dick Shea's testimony established Lee Dubberly, Appellants' immediate supervisor, to be the decisionmaker in their termination and therefore the analysis should surround his, rather than Dick Shea's, motives.  It would follow, then, that Dubberly calling Appellants "boy" and making

racial jokes demonstrates pretext.  Upon re[8]view, however, Dick Shea's testimony does not support Appellants' proposition.

Despite there being a dispute as to whether Dick Shea *intended* for Appellants to be fired, the evidence establishes that Dick Shea made the decision to send Freddie and Chester home.  By Freddie and Chester's own account of the facts, Dick Shea fired them.  And deposition testimony reflects that Dubberly, Hughes, and Harris all understood Dick Shea to have terminated Appellants, including Larry.  We locate no evidence establishing that Appellants' departure from MSB was anyone but Dick Shea's decision.  Dubberly's comments therefore have no bearing on our analysis. *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 802 (11th Cir. 2005) ("'[S]tatements made by nondecisionmakers or statements made by decisionmakers unrelated to the decisional process' do not demonstrate discriminatory intent[.]" (quoting *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003))).

And while Larry was not late from lunch on April 10, 2017, the evidence demonstrates that the incident was merely the end point to the larger issue at hand—poor work ethic on all Appellants' part.  We have long held that an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a

---

[8] The parties dispute whether Appellants were initially fired or simply sent home and never showed up on a later date.  In the light most favorable to Appellants, we view their being sent home as termination.  Regardless, this issue is not dispositive of their claims.

discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984), *abrogated on other grounds by Lewis I*, 918 F.3d at 1224. "[F]ederal courts do not sit to second-guess the business judgment of employers." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997)).

To the extent Appellants argue pretext is shown because terminating Freddie and Chester for returning late from lunch is inconsistent with Appellees' explanation that there was a decline in work ethic, we disagree. Indeed, inconsistent reasons can suggest pretext, *Knox*, 957 F.3d at 1245, but providing additional consistent reasons is not evidence of discrimination. *See Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003) ("Shifting and inconsistent explanations can provide a basis for a finding of pretext. But the explanations must actually be shifting and inconsistent to permit an inference of mendacity.")); *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998) ("At most, the jury could find that performance was an additional, but undisclosed reason for the decision; the existence of a possible additional non-discriminatory basis for [Plaintiff's] termination does not, however, prove pretext."). As previously explained, Freddie and Chester's perceived extended lunch is consistent with a decline in work ethic, and specifically, the type of decline in work ethic for which Appellees presented evidence.

Chester and Freddie attempt to rebut that they exhibited any work ethic issues, arguing that Appellees deviated from their "three

strikes" discipline policy by terminating them without documentation of discipline in their personnel files. Chester relies on *Morrison v. Booth*, 763 F.2d 1366 (11th Cir. 1985), wherein we stated that "[d]epartures from normal procedures may be suggestive of discrimination." 763 F.2d at 1374. However, the black employee in *Morrison* utilized a comparator and demonstrated that her employer was "willing to break, rather than simply bend, the rules for another white employee," but not her. *Id.* Here, there is no evidence that Appellees applied progressive disciplinary procedures inconsistently on the basis of race. And "[t]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995) (emphasis omitted)).

Next, Chester alone attempts to utilize a comparator to demonstrate pretext. He relies on Larry's testimony that Doug Earl, a white crane operator, returned late from lunch but was not sent home or terminated. But, like Larry and Freddie's compensation claims, Chester fails to provide any meaningful comparison. Nothing is mentioned of Earl's "employment or disciplinary history," or whether he shared "the same supervisor(s)." *Jenkins*, 26 F.4th at 1249 (citing *Lewis I*, 918 F.3d at 1227–28). Conversely, Appellants had previously been "late to work, not working diligently, and taking too long for lunch."

Thus, reviewing the record as a whole, we are left only with testimony that Dick Shea once said Larry "had a strike against [him] because [he] was black" and "told [him] about not becoming [n-word] rich." While racial remarks that "are either too remote in time or too attenuated" from the employment decision are not direct evidence of discrimination, such comments may provide circumstantial evidence of discrimination. *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir. 1998). But these statements are generally insufficient "absent some additional evidence supporting a finding of pretext." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002)). For example, in *Rojas v. Florida*, a decisionmaker's comment to a woman at the company, who was not the plaintiff, that she did not deserve her job because she was a woman was too "isolated and unrelated to the challenged employment decision" to by itself be evidence of pretext. 285 F.3d 1339, 1343 (11th Cir. 2002).

In this case, Dick Shea made the remarks at Larry's first job after, according to Larry, he became a superintendent, and the comments appeared to occur on this single occasion out of the thirty-five years that Larry worked at MSB. Because it occurred years prior to Appellants' termination and was unrelated to the termination decision, the remarks alone are insufficient to demonstrate pretext. *See Alvarez*, 610 F.3d at 1267–68 (holding that a "single stray remark . . . not made by one of the ultimate decision makers" did not show pretext); *Scott*, 295 F.3d at 1230 (holding that a

racist comment made before the commentor was plaintiff's supervisor, years prior to the plaintiff's termination, alone did not show pretext).

Accordingly, we affirm the district court's grant of summary judgment for Appellees on the race-based termination claims.

We now turn to the age discrimination in termination claims. Assuming Larry and Chester presented a prima facie case, Appellees put forth evidence of a decline in work ethic. We therefore must determine whether Larry and Chester satisfy the convincing mosaic framework.

Larry and Chester assert the same pretext arguments that they did for their racial discrimination claims: they were not late returning from lunch, Shea knew they were not late because Larry told him so, the progressive disciplinary policy was not followed, and Doug Earl was not terminated despite returning late from lunch. Having already addressed and rejected these arguments, Appellants fail to present any evidence indicating that Appellees' reason for terminating Larry and Chester was pretextual.[9] The record is devoid of any evidence suggesting age motivated their termination. That Larry and Chester, at summary judgment, incorporated by reference the pretext arguments supporting their race-based termination claims emphasizes this.[10] *See Sims v. MVM, Inc.*,

---

[9] As to Doug Earl in the age discrimination context, Chester admits that Appellants present no evidence of Earl's age.

[10] Larry and Chester combine their pretext arguments on appeal as well.

704 F.3d 1327, 1334 (11th Cir. 2013) (holding that "the weak or non-existent inference of age bias urged by [plaintiff] simply cannot carry [plaintiff's] burden").

Because we affirm the district court's summary judgment ruling, we need not address whether the district court properly invoked judicial estoppel.

### B.  Award of Costs

Following summary judgment and the trial as to Larry's FLSA claim, the district court awarded Appellees $13,374.01 in prevailing party costs.  Pertinent to this appeal, the district court awarded $1,761.91 in (1) condensed deposition transcripts and deposition disks, (2) costs related to deposition exhibits, and (3) payment for expedited deposition transcripts.  Larry alone challenges the ruling as exceeding the scope of 28 U.S.C. § 1920.

We review a district court's award of costs for abuse of discretion.  *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1295 (11th Cir. 2001).  A court abuses its discretion if it awards costs in excess of the costs allowed by 28 U.S.C. § 1920.  *Maris Distrib. Co. v. Anheuser–Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002).

Under Federal Rule of Civil Procedure 54, a prevailing party may receive costs, apart from attorney's fees.  Fed. R. Civ. P. 54(d)(1).  "There is a presumption in favor of awarding costs."  *Arcadian Fertilizer, L.P.*, 249 F.3d at 1296 (citing *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991)).  "In awarding costs, a district court is bound by the limitations set forth in 28 U.S.C. § 1920."  *Id.*  Among the costs that may be taxed under § 1920, and

as pertinent to this appeal, are "fees for 'printed or electronically recorded transcripts necessarily obtained for use in the case.'" *Id.* (quoting § 1920(2)).

First, Larry argues that the condensed deposition transcripts and deposition disks are extraneous expenses for the convenience of counsel rather than costs within the scope of § 1920. In support, he cites to several district courts that have found such items to be non-taxable under § 1920. Appellees, on the other hand, cite to district courts finding the items taxable under the statute.

While courts are bound by § 1920's limitations, the statute's language does not clearly indicate whether it encompasses condensed deposition transcripts or deposition disks. Indeed, we have held that "costs associated with depositions may be taxed," *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 621 (11th Cir. 2000), such as reasonably necessary expedited transcripts, *Maris Distrib. Co.*, 302 F.3d at 1226. But we have not delineated what costs are sufficiently associated with depositions.

Because no binding authority firmly resolves this matter, district courts are split on this matter, and the court below relied on our holding in *U.S. E.E.O.C. v. W&O, Inc.*, we see no "clear error of judgment" or "appli[cation of] the wrong legal standard." *United States v. Lopez*, 649 F.3d 1222, 1236 (11th Cir. 2011) (quoting *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004)); *see also Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1103 (11th Cir. 2005) ("Abuse-of-discretion review 'recognizes the range

of possible conclusions the trial judge may reach.'" (quoting *Frazier*, 387 F.3d at 1259)).

Next, Larry argues that the costs related to *deposition* exhibits, such as their management, copying, scanning, binding, and tabbing by the court reporter, are not taxable because they are primarily for the convenience of counsel.  For the same reasons as stated above—no clear indication from § 1920(2)'s language, no binding case law, and diverging conclusions among the district courts—we similarly hold that the district court did not abuse its discretion in awarding Appellees taxable costs for the related costs of deposition exhibits under § 1920(2).

Lastly, Larry argues that payment for two expedited deposition transcripts was improper under § 1920(2) because Appellees did not demonstrate that their expedited nature was reasonably necessary.  Upon review, and unlike the exhibits and condensed depositions, it appears Larry failed to raise this matter before the district court.  One of the depositions was objected to only insofar as Appellees "did not rely upon [it]" at summary judgment.  The other was objected to on the basis that a video deposition was unnecessary.  Larry failed to raise the expedited nature of any deposition in his objection to the Bill of Costs.  Accordingly, the district court did not abuse its discretion in awarding costs.

## III.    CONCLUSION

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**